Roosevelt **WRIGHT**, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 20153.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 3, 1967.

Decided Jan. 31, 1968.

---

35. 176 F.2d at 418–419.

36. Gibson v. Beaver, *supra* note 33, 226 A.2d at 276, quoting Harper & James, Torts § 21.3 at 1174 (1956). (Emphasis in the original.)

Bazelon, Chief Judge, dissented.

Mr. A. Yates Dowell, Jr., Washington, D. C. (appointed by this court) for appellant.

Mr. Robert Kenly Webster, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

On the afternoon of June 16, 1965, the third-floor apartment of Norma J. Sword was broken into, and from it were purloined a large stereo set, an extensive collection of records and a piggy bank containing coins. Information vital to the apprehension and prosecution of appellant as a participant in the affair was supplied by Lois M. Vines, a second-floor neighbor. Between 1:30 and 2:00 p. m. on that date, she heard noises emanating from Miss Sword's apartment, and minutes later saw two men, one with black gloves and a brown paper bag, exit from the basement of the building and leave in a green 1956 Plymouth. Mrs. Vines, checking immediately, found the door to the Sword apartment open, and located the stereo set just outside the building. Then perceiving the Plymouth returning, she retreated to her apartment, and through her window watched the two men put the stereo set into the car. She jotted down the license plate number and later gave it to the police, together with physical descriptions of the two men.

About 2:25 p. m., two police officers received a radio report on the housebreak-

ing, and a few minutes later spotted the Plymouth, which was parked and unoccupied about ten blocks away. During a brief surveillance of the vehicle, appellant came out of a building close by and got into the driver's seat. The officers then engaged him in conversation, observing in open view on the back seat several records, a brown bag of pennies, two screwdrivers, and a pair of black gloves. Appellant could not produce the registration card for the automobile, and told the officers that he had obtained it on loan from his brother about noon. Thereupon, he was arrested and the trunk was searched for the stereo set.[1] Compliably with appellant's request, he was escorted to the nearby apartment of a friend, who informed the officers that appellant had been there for the past hour and a half. Appellant was then conducted to a precinct station, where shortly thereafter the events with which this appeal is primarily concerned occurred.

For the purpose of a possible identification, Mrs. Vines was brought to the station. Approaching it, she noticed the Plymouth, which had been parked in the vicinity, and remarked that it was the car she had seen earlier. She was taken inside, first to a room the transpirations in which the record does not reveal, and then to the threshold of an adjoining room. In the latter were appellant and about a half-dozen police officers in plain clothes. Several of the occupants, including appellant, were Negroes. Appellant was seated and, under Mrs. Vines' scrutiny, was requested to stand and turn around, which he did. At some point, Mrs. Vines identified him as one of the two participants in the pilferage of Miss Sword's apartment.

Indicted and placed on trial on counts of housebreaking [2] and grand larceny,[3] appellant insisted that at the time of the offenses he was in the company of friends. Two of them so testified, and appellant's brother corroborated several aspects of his story.[4] On the other hand, and additionally to the Government's circumstantial showing, Mrs. Vines, without objection, related her prior identification of appellant at the precinct station, and twice again identified him in the courtroom. The jury convicted on both counts.

■■ Three contentions are presented for our consideration. We find merit in but one,[5] which at the outset we dis-

---

1. The set was not in the trunk, but another screwdriver and another pair of black gloves were found therein. See *infra* note 5.

2. D.C.Code § 22–1801 (1967 ed.).

3. D.C.Code § 22–2201 (1967 ed.).

4. Appellant theorized that while he was socializing strangers had taken the Plymouth and committed the offenses.

5. Appellant complains also of the trial judge's denial of a motion to suppress the screwdriver and gloves removed from the trunk of the automobile, which were introduced into evidence at the trial, and of his refusal to charge in the language of a requested instruction stating, *inter alia*, that appellant was not required to prove that another person may have committed the crimes. Unlike the situation in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), upon which appellant relies, but see Cooper v. State of California, 386 U.S.

58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the examination of the trunk occurred contemporaneously with and at the place of appellant's arrest under circumstances indicating convincingly his participation in the burglary. These conditions, we have held, justify such a search. Adams v. United States, 118 U.S.App.D.C. 364, 336 F.2d 752 (1964), cert. denied 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965); Jefferson v. United States, 121 U.S.App.D.C. 279, 280, 349 F.2d 714, 715 (1965).

Nor did the judge's action in regard to the requested instruction constitute error. His charge recognized appellant's alibi defense as "a legitimate and legal and proper defense." It included an identity instruction in effect admonishing that one of the "essential elements" the Government had to prove beyond a reasonable *doubt was that appellant "was present at the time and place of the commission of the alleged offenses."* The jury was told

tinguish from another which of late we have quite frequently encountered.[6] When identified by Mrs. Vines at the precinct station, appellant was unrepresented by counsel, but of this no point is sought to be made, nor could it be. In United States v. Wade [7] and Gilbert v. State of California,[8] decided after appellant's trial, the Supreme Court held that a suspect must, as a matter of Sixth Amendment right, be afforded the assistance of counsel at a pretrial lineup.[9] But the Court announced contemporaneously in Stovall v. Denno [10] that this constitutional rule is to operate prospectively.[11] Beyond this, we have declined to apply, in the exercise of our supervisory authority in this jurisdiction, the *Wade-Gilbert* principle retroactively.[12]

What appellant does urge is that the circumstances surrounding his station house confrontation with Mrs. Vines induced an identification which was not the product of the witness' objective judgment, and that the Government's capitalization on it resulted in a deprivation of due process. *Stovall* confirmed the proposition that a confronta-

tion with a view to identifying a suspect may be "so unnecessarily suggestive and conducive to irreparable mistaken identification that he [is] denied due process of law." [13] And this issue an accused may litigate despite non-retroactivity of the *Wade-Gilbert* requirement of counsel at such confrontations.[14]

The record before us reflects conditions auguring the possibility that the limits set by the demands of due process were exceeded here. "A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." [15] Moreover, "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as a part of a lineup, has been widely condemned." [16] From what appears here, there was no lineup, in the commonly accepted sense of the word; rather, the exhibition which may have engendered Mrs. Vines' positive identification was of appellant alone.[17] We have declared that

that appellant "does not have to prove his innocence," and the judge at a number of points restated the Government's burden of proof as to all elements. We think the charge thoroughly and fairly covered appellant's defensive theory, and communicated adequately the substance of his well taken position that he had no obligation to show that another was actually the transgressor.

6. See Williams v. United States, 120 U.S. App.D.C. 244, 345 F.2d 733, cert. denied 382 U.S. 962, 86 S.Ct. 444, 15 L.Ed.2d 364 (1965); Kennedy v. United States, 122 U.S.App.D.C. 291, 293–296, 353 F.2d 462, 464–467 (1965); Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206, 209–210 (1967); Borum v. United States, No. 20,270 (D.C.Cir. Dec. 21, 1967) at 3. See also Johnson v. United States, No. 20,657 (D.C.Cir. June 13, 1967); Cunningham v. United States, 129 U.S.App.D.C. 104, 391 F.2d 457 (D.C. Cir. June 23, 1967); Parker v. United States, 129 U.S.App.D.C. 104, 391 F.2d 457 (Aug. 17, 1967), each of which was affirmed without opinion.

7. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

8. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

9. United States v. Wade, *supra* note 7, 388 U.S. at 223–239, 87 S.Ct. 1926; Gilbert v. State of California, *supra* note 8, 388 U.S. at 272, 87 S.Ct. 1951.

10. 388 U.S. at 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967).

11. *Id.* at 296–301, 87 S.Ct. 1967.

12. Borum v. United States, *supra* note 6, at 3–5.

13. 388 U.S. at 302, 87 S.Ct. at 1972.

14. *Ibid.* See also Palmer v. Peyton, 359 F.2d 199 (4th Cir. *en banc* 1966).

15. United States v. Wade, *supra* note 7, 388 U.S. at 228, 87 S.Ct. at 1933.

16. Stovall v. Denno, *supra* note 10, 388 U.S. at 302, 87 S.Ct. at 1972.

17. In United States v. Wade, *supra* note 7, 388 U.S. at 234, 87 S.Ct. at 1936, the Court pointed out that "the vice of

"[t]he presentation of only one suspect in the custody of the police, raises problems of suggestibility that bring us to the threshold of an issue of fairness." [18] To this may be added the fact that minutes before the confrontation the identifying witness had recognized the automobile which the culprits had employed in their criminality.

On the other hand, "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it," [19] and the record on this appeal does not disclose some, and conceivably many, of the circumstances which may bear importantly on the due process issue. This undoubtedly is a consequence of the fact that the issue was not raised in the District Court.[20] That the question was not broached there is quite understandable since the principle giving rise to it appears to have enjoyed its

first successful invocation in federal litigation only after appellant's trial had been concluded,[21] and in any event its added stature was not bestowed by *Stovall* until this appeal was pending.[22] But lacking the development that only adversary treatment can produce, the record in this connection all too frequently maintains silence in the face of crying needs for additional enlightenment.

We are uninformed as to the characteristics which by Mrs. Vines' observation served to distinguish appellant from other persons.[23] We know relatively little as to the similarities and the differences, respecting appellant and those in the room with him, in age, height, weight, dress and other physical features.[24] We are not clear as to whether the contested identification was made before or after appellant was asked to stand.[25] Nor can we tell whether, all circumstances considered, a lineup was feasible.[26] These are but illustrative of

---

suggestion created by the identification in *Stovall* * * * was the presentation to the witness of the suspect alone handcuffed to police officers" and observed that "[i]t is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police."

18. Wise v. United States, *supra* note 6, at 209.

19. Stovall v. Denno, *supra* note 10, 388 U.S. at 302, 87 S.Ct. at 1972.

20. See note 22, *infra*.

21. The first and only case we have found holding that a particular pretrial identification infringed due process rights is Palmer v. Peyton, *supra* note 14.

22. In these circumstances, our disposition is uninhibited by the requirement that issues proffered on appeal must normally be raised and decided initially in the trial court. See, *e. g.*, Hormel v. Helvering, 312 U.S. 552, 557–559, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Patterson v. State of Alabama, 294 U.S. 600, 606–607, 55 S.Ct. 575, 79 L.Ed. 1082 (1935); In re Elmore, 127 U.S.App.D.C. 176, 178, 382 F.2d 125, 127 (1967).

23. Among these, of course, might be appellant's garb. Mrs. Vines told police

that the man she later identified as appellant wore a "[b]lack leather jacket, a cap, and white tennis shoes." We are unable to determine whether appellant was so attired when she viewed him at the precinct station.

24. We are also uncertain as to which were seated or were standing.

25. As we have stated, before appellant was requested to stand, Mrs. Vines was with the police in a room adjoining the room in which appellant was. We are in the dark as to just what may have transpired there, including any identification that might possibly have been made before appellant arose.

26. See Stovall v. Denno, *supra* note 10, 388 U.S. at 301–302, 87 S.Ct. 1967; Wise v. United States, *supra* note 6, at 209–210; State v. Sinclair, 49 N.J. 525, 231 A.2d 565, 575–576 (1967).

We note that the station house confrontation occurred after appellant had been arrested on abundant probable cause, but also after his alibi was corroborated by a friend. The record does not tell us precisely how much time elapsed between the commission of the offenses and the confrontation. In this connection it will be recalled that we emphasized in *Wise*, *supra*, at 209, that "circumstances of

relevant details we cannot fathom from what is before us.

■ Since the inadequacy of the record precludes our decision of the issue, we remand the case to the District Court [27] for an evaluation of appellant's claim. The court, in application of the standard enunciated in *Stovall*, will determine whether the method of appellant's identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." [28] If no due process violation is found, the conviction must stand. If, on the other hand, such a violation is found, the dispositional principles delineated in *Wade* [29] and *Gilbert* [30] should be applied analogously. In sum, the District Court will award appellant a new trial unless it is "able to declare a belief that" Mrs. Vines' testimony as to her identification of appellant at the precinct station "was harmless beyond a reasonable doubt." [31] In the event of another trial, any and all testimony as to Mrs. Vines' identification at the station will be excluded,[32] and the Government will be afforded "the opportunity to es-

---

fresh identification" are "elements that if anything promote fairness, by assuring reliability, and are not inherently a denial of fairness," and that "we do not consider a prompt identification of a suspect close to the time and place of an offense to diverge from the rudiments of fair play that govern the due balance of pertinent interests that suspects be treated fairly while the state pursues its responsibility of apprehending criminals." See also State v. Matlack, 49 N.J. 491, 231 A.2d 369, 373 (1967).

**27.** Compare United States v. Wade, *supra* note 7, 388 U.S. at 242, 87 S.Ct. 1926; Gilbert v. State of California, *supra* note 8, 388 U.S. at 272, 87 S.Ct. 1951.

**28.** We do not reach the question, treated in the dissenting opinion, whether an unjustified failure to conduct a lineup *ipso facto* works a denial of due process. The evidence to be developed on remand may establish complete justification for the absence of a lineup. See Stovall v. Denno, *supra* note 10, 388 U.S. at 302, 87 S.Ct. 1967, 1972; Wise v. United States, *supra* note 6, at 209–210; Kennedy v. United States, *supra* note 6; State v. Sinclair, *supra* note 26, 231 A.2d at 575–576; State v. Matlack, *supra* note 26, 231 A.2d at 373. It may, for other reasons, turn the decision one way or the other without touching the *per se* validity of a one-man presentation. We are not at liberty to make a constitutional pronouncement not imperatively required on the record before us, and we ought not reach for it. Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); Bush v. State of Texas, 372 U.S. 586, 590, 83 S.Ct. 922, 9 L.Ed. 2d 958 (1963); Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Rescue Army v. Municipal Court, 331 U.S. 549, 568, 67 S.Ct. 1409, 91 L.

Ed. 1666 (1947). Nor do we anticipate constitutional questions in advance of actual need for their resolution. Bush v. Texas, *supra*, 372 U.S. at 590, 83 S.Ct. 922; Clay v. Sun Ins. Office Ltd., 363 U.S. 207, 211–212, 80 S.Ct. 1222, 4 L.Ed. 2d 1170 (1960); United States v. Petrillo, 332 U.S. 1, 12, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); Asbury Hospital v. Cass County, 326 U.S. 207, 213–214, 66 S.Ct. 61, 90 L.Ed. 6 (1945).

Moreover, we do not have before us all of the circumstances, and constitutional decisions, no less than judicial resolutions of other types, are not to be rested on inadequate factual support. United States v. Petrillo, *supra*, 332 U.S. at 12, 67 S. Ct. 1538; Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 210–213, 55 S. Ct. 187, 79 L.Ed. 281 (1934); City of Hammond v. Schappi Bus Line, Inc., 275 U.S. 164, 171–172, 48 S.Ct. 66, 72 L. Ed. 218 (1927); Chastleton Corp. v. Sinclair, 264 U.S. 543, 548–549, 44 S.Ct. 405, 68 L.Ed. 841 (1924). We reserve the question our dissenting brother discusses for a concrete record, and an occasion of strict adjudicative necessity. Peters v. Hobby, 349 U.S. 331, 338, 75 S.Ct. 790, 99 L.Ed. 1129 (1955); Stefanelli v. Minard, *supra*, 342 U.S. at 120, 72 S.Ct. 118; Rescue Army v. Municipal Court, *supra*, 331 U.S. at 568, 67 S.Ct. 1409.

**29.** 388 U.S. at 239, 242, 87 S.Ct. 1926.

**30.** *Id.* at 272–274, 87 S.Ct. 1951.

**31.** Gilbert v. State of California, *supra* note 8, 388 U.S. at 274, 87 S.Ct. at 1957, quoting Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**32.** Gilbert v. State of California, *supra* note 8, 388 U.S. at 272–274, 87 S.Ct. 1951.

tablish by clear and convincing evidence that" her in-court identification was "based upon observations of the suspect other than the [station house] identification." [33] And if, but only if, that burden is carried may Mrs. Vines again undertake upon a retrial an identification of appellant in the courtroom.

Remanded for further proceedings.

BAZELON, Chief Judge (dissenting):

I believe that due process is violated whenever the police unjustifiably fail to hold a lineup. Since mistaken identifications are probably the greatest cause of erroneous convictions,[1] we must require the fairest identification procedures available under the circumstances. With the stakes so high, due process does not permit second best.

I think this is what the Supreme Court meant in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In *Stovall* it held that a defendant was entitled to show that the confrontation in his case "was so *unnecessarily* suggestive and conducive to irreparable mistaken identification that he was denied due process of law." 388 U.S. at 301–302, 87 S.Ct. at 1972 (emphasis supplied). The Court went on to say that "The practice of showing suspects singly to persons for the purpose of identification, and not as a part of a lineup, has been widely condemned." It affirmed defendant's conviction only because the record revealed that "the showing of Stovall to [the eye-witness-victim] in an immediate hospital confrontation was *imperative.*" Id. at 302, 87 S.Ct. at 1972 (emphasis supplied).

The clear thrust of *Stovall* is that, without justifying circumstances, a one-man showup is too unnecessarily suggestive to satisfy due process. A lineup must be conducted unless it will necessitate a delay which is likely to make identification impossible or less reliable.[2]

In *Wade* the Court pointed out that cross-examination at trial "cannot be viewed as an absolute assurance of accuracy and reliability [in courtroom identifications]. Thus, in the present context, where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself." 388 U.S. at 235, 87 S.Ct. at 1936. In other words, we must insist on the fairest feasible identification procedures and not rely on the courts' ability to gauge the psychological effects of more suggestive procedures.

In light of *Stovall* and *Wade*, I must reject the majority's assertion that I am making a new "constitutional pronouncement." [3] I would remand to the District Court to give the Government an opportunity to show that the failure to hold a lineup was justified. Due process requires this showing.

---

33. United States v. Wade, *supra* note 7, 388 U.S. at 240, 87 S.Ct. at 1939; Gilbert v. State of California, *supra* note 8, 388 U.S. at 272, 87 S.Ct. 1951.

1. See United States v. Wade, 388 U.S. 218, 229–230, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and materials cited therein.

2. In *Stovall* there was a substantial likelihood that in the time needed to arrange a lineup in the hospital room the eyewitness might die. In Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), the police captured the suspect a minute or so after the offense and immediately brought him back to be identified by the victims. This one-man showup was justifiable because, as the court suggested, the fresh identification promoted fairness by assuring reliability. 383 F.2d at 209. Moreover, the identification took place at the scene of the offense rather than in the suggestive atmosphere of a police station.

3. *Supra* p. 1261 n. 28.