Toribio A. SERA–LEYVA, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20619.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 10, 1968.

Decided Feb. 18, 1969.

Mr. Anthony E. Grimaldi, Washington, D. C. (appointed by this court), for appellant.

Mr. Barry F. Greenberg, Attorney, Department of Justice, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and Allan M. Palmer, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

■■ This is an appeal from a robbery conviction resulting in a four to

twelve year sentence. The only matter raised on appeal that gives us concern is whether the pre-trial confrontation between the main prosecution witness and defendant deprived the defendant of due process, and we remand for fuller exploration of the circumstances.[1]

The Government's case rested in essence on the testimony of one Massey, a cab driver, identifying appellant as the man who robbed him of approximately $18. He also testified on direct that he made a pre-trial identification in the U. S. Commissioner's office. The only other evidence presented by the Government was testimony by Detective Bracey confirming the pre-trial identification.

Massey testified as follows: When he picked up defendant and another unidentified person at about 7:00 p. m. on April 3, 1966, he observed their faces before they entered his cab. On arrival at the appointed address, Sera-Leyva, sitting in the right rear seat, opened the back door and reached into his trousers as if to get some money to pay. Instead, he drew a gun and demanded and got Massey's money. Massey got a very good look at defendant since the inside light was on; in consequence of his having been held up before, he had made a habit not only of turning on the dome light but also of staring in the face of all passengers before collecting his fare. After taking Massey's money, the robbers fled on foot a couple of blocks, entered a parked car and drove off. Massey followed them, but fearing the gun, he turned his head away upon passing them so as not to be recognized. The police were contacted that night, but the ensuing search was fruitless.

An affidavit by Detective Bracey supporting the application for an arrest warrant shows that the next morning, after viewing about four photographs of suspects, Massey picked out Sera-Leyva's, saying, without any doubt, that it was that man or his twin brother. Nothing about this photographic identification was introduced at trial and we have no other information about the surrounding circumstances.

Massey further testified that on calling the Robbery Squad on April 5, the second morning after the robbery, he was instructed without elaboration to report to the Robbery Squad office. There he was told to report across the street at the Commissioner's office. According to both Massey and Bracey, Massey sat in the Commissioner's office until he saw and identified Sera-Leyva coming through the door. Bracey said his only conversation beforehand was to direct Massey to sit, and if he saw the man who robbed him enter, and was positive, to tell the detective, but if not, "fine." He also thought that two or three other hearings preceded Sera-Leyva's, but it is unclear whether these occurred before Massey arrived and whether Massey saw anyone enter other than appellant. Massey denied knowing appellant's name before he entered the room, but he did know defendant was foreign from hearing his accent in the car. Immediately before appellant entered the room, the marshal called out, "United States versus Toribio Sera-Leyva."

Massey was unshaken on cross-examination in the positiveness of his identification: "In case a man threw a gun in your face, Mister, you would never forget that face, not within three weeks, three days, three years, or no time."

The evidence at trial concluded with testimony of three alibi witnesses for the defendant.

---

1. Appellant also asserts an abuse of discretion in the trial court's allowing the use of an interpreter and also not granting appellant's motion for judgment of acquittal. We find no merit in these asserted errors. Appellant's trial attorney requested and strongly defended the use of an interpreter; he was needed so that the alibi witnesses, who spoke broken English, would not be confused nor confuse the jury; the judge and defense counsel both went to great pains to help defense counsel obtain an interpreter as he requested. The denial of judgment of acquittal was proper since there was disputed evidence of guilt which if believed by the jury was sufficient to uphold a finding of guilt.

At trial defense counsel did not object to the testimony of Massey concerning the pre-trial identification, nor raise any due process question concerning that testimony. But the trial was held in July 1966, prior to the issuance, on June 12, 1967, of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and companion cases.[2] The trial record is one in which the *Stovall* due process matters were not thoroughly explored, although there was a limited cross-examination of Massey before the jury.

■ The "claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it," *Stovall*, *supra*, 388 U.S. at 302, 87 S.Ct. at 1972; and "each case must be considered on its own facts." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Where the record on appeal is insufficient for this court to determine whether due process was violated, as in the case of a trial held prior to June 12, 1967, and a record made without focus on pre-trial confrontation, we have remanded for further exploration in light of *Wade-Gilbert-Stovall. See* Wright v. United States, 131 U.S.App.D.C. 279, 404 F.2d 1256 (1968).

We now consider this court's three recent *en banc* lineup decisions, Clemons v. United States, Clark v. United States, and Hines v. United States, 133 U.S.App. D.C. ——, 408 F.2d 1230 (1968). There were post-*Stovall* hearings by the District Court on the due process question in *Clark* and *Hines,* and in *Clemons* a rather substantial record with multiple identification witnesses. In both *Hines* and *Clemons,* pre-*Wade* identifications at preliminary hearings were found not to have violated due process. In both cases it was clear that many people were in the hearing room and that while the

witnesses were assembled, several other persons came in through the hearing room door before the suspect entered. This court noted that the trial court found the confrontation was "held under conditions which assimilate it very closely to a lineup."[3] However this court also pointed out the perils of confrontation at preliminary hearing, including both the difficulty of controlling the conditions and the difficulty of establishing exactly what conditions existed.

The conditions that existed at the confrontation of appellant are not at all clear on the record before us, and there may well be problems of suggestibility that should be carefully appraised. In appellant's case there was a lone identifying witness, whereas in both *Hines* and *Clemons* there were four witnesses who made various identifications of the suspect—a factor lowering the "likelihood of irreparable misidentification." Also, both Clemons and Hines were Negroes and presumably entered the hearing room after several others of their race. Appellant, however, was a foreigner; this was known by Massey before the confrontation; and the facts may include not only the marshal's recital of a foreign name, but also the singularity of appellant's alien appearance.

■ The facts we have before us concerning the hearing room confrontation, elicited on direct and cross-examination of prosecution witnesses, are favorable to the Government. On hearing these damaging responses before the jury defense counsel did not press further. Without the inhibiting presence of the jury, however, he might well have probed deeper in his examination of both Massey and Detective Bracey, to attempt to bring out elements of suggestibility in the identification process.[4] This dilemma was

2. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

3. 133 U.S.App.D.C. at p. ——, 408 F. 2d at p. 1240 (referring to the *Stovall* hearing held in *Hines*).

4. Defense counsel could also have explored what reason, if any, existed for failure to hold a lineup.

recognized by the Supreme Court in *Wade, supra,* 388 U.S. at 240–241, 87 S. Ct. at 1939:

> Counsel is then in the predicament in which Wade's counsel found himself— realizing that possible unfairness at the lineup may be the sole means of attack upon the unequivocal courtroom identification, and having to probe in the dark in an attempt to discover and reveal unfairness, while bolstering the government witness' courtroom identification by bringing out and dwelling upon his prior identification.

Avoiding this predicament was one reason why the Supreme Court guaranteed counsel at the lineup itself. It is equally a reason why *Stovall* due process determinations should, in most cases, be conducted before a judge without the presence of the jury.

The record now before us does not reveal something planted in Massey's mind "so unnecessarily suggestive and conducive to irreparable mistaken identification," Stovall v. Denno, *supra,* 388 U.S. at 302, 87 S.Ct. at 1972, as to deny due process. Yet our record lacks the full "development that only adversary treatment can produce." Wright v. United States, *supra,* 131 U.S.App.D.C. at 283, 404 F.2d at 1260. We have no information concerning the photograph identification beyond a paragraph in Detective Bracey's affidavit for an arrest warrant. Any impermissible suggestibility in the photographic identification procedure might taint the next day's identification before the Commissioner, making that more like the illegal cell block confrontation in *Clemons, Clark,* and *Hines* than the preliminary hearing confrontation of *Hines* and *Clemons.*

We could skirt the problems of the pre-trial confrontation if we were clearly able to make a determination of independent source, but the record in its present state does not enable us to initiate any such determination. This determination would be affected by the existence vel non of a nonsuggestive photographic identification (*see* Witness Aggrey in *Hines* and Witness Raniecky in *Clemons*), and that issue in turn requires further factual investigation. While Massey's identification is unusually strong, and there was good lighting, we hesitate to initiate a finding of independent source. It happens that we do not have evidence in the record of a detailed description by the identifying witness prior to the confrontation in issue. *Compare* Clark v. United States, *supra* 133 U.S.App.D.C. ——, 408 F.2d 1246, where one of the factors establishing independent source for Witness Jones' in-court identification was his recollection of the "robber's distinctive physical appearance." We by no means suggest that we find problems with Massey's description of the robber, but only say that it did not include the kind of distinctive physical or other characteristics that would of itself lead an appellate court to initiate a finding of independent source.

■ Accordingly the case must be remanded for further inquiry concerning the totality of the circumstances of the confrontation at the April 5 preliminary hearing. The due process issue will also likely embrace inquiry as to the photographic selection of April 4. If the circumstances of the confrontation brought out on the prosecution's direct case were impermissibly suggestive, the question would arise whether denial of due process was or may be obviated by other sources justifying the out-of-court identification and providing reasonably reliable indicators of guilt.[5]

In the present state of the record we do not spell out in detail the steps that may be involved in further proceedings. It suffices to say these should be conducted in accordance with this opinion and the *en banc* opinion in *Clemons et al.*

Remanded.

---

5. Clemons v. United States, *supra,* 133 U.S.App.D.C. ——, 408 F.2d 1248.