**Sidney L. GROSS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20953.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 10, 1968.

Decided Feb. 19, 1969.

---

Fahy, Senior Circuit Judge, dissented in part.

Mr. Kingdon Gould, Jr., Washington, D. C. (appointed by this court), with whom Mr. Mitchell Blankstein, Washington, D. C., was on the brief, for appellant.

Mr. Daniel J. Givelber, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

PER CURIAM.

This appeal is from convictions of housebreaking (22 D.C.Code § 1801) and grand larceny (D.C.Code § 2201). The offenses were charged as having been committed on March 19, 1966. Appellant was arrested that day and has been in confinement ever since. The indictment was returned April 25, 1966. At the first trial two months later, the jury was unable to agree. The second trial, the result of which is now before us, was on December 13 and 14, 1966. In March, 1967, appellant was sentenced to concurrent terms of imprisonment of two to six years. This appeal *in forma pauperis* was authorized by the District Court on April 6, 1967, on which day the court also ordered the preparation of a transcript of the record. Notwithstanding numerous efforts by appointed counsel to obtain the transcript earlier, it was not furnished in complete form for use on this appeal until February 7, 1968. The convictions thus remained unreviewable until appellant's confinement had approximated the minimum period of his sentences.[1]

Appellant now submits two grounds for relief. He asks that we set aside the convictions and direct dismissal of the indictment for denial of an asserted constitutional right to a speedy appeal. His other claim is that a key witness's in-court identification of him as the person who committed the offenses was admitted in evidence in violation of due process concepts recently announced by the Supreme Court. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). We consider this latter contention first.

At trial the prosecution called Mr. Keith Krause as a witness. He said that in the early morning hours of March 19,

---

1. The case was submitted for decision to a panel of this court on May 10, 1968. Not long thereafter the entire court decided to hear *en banc* three cases typical of those presenting *Wade-Stovall* problems of identification testimony, and to delay decision of all other such cases, including this one, pending the *en banc* result. *See* Clemons v. United States, 133 U.S. App.D.C. ——, 408 F.2d 1230, Dec. 6, 1968.

before daylight, he heard the burglar alarm go off at a fur store near where he lived. He went to his second story window and observed a parked car 50 to 75 feet away. He said he saw appellant stepping off the curb in front of the store, carrying a white fur stole. The car was near a street light and the night was clear. He said he got a good look at appellant and the license number of the car, which he gave to the police. He described appellant as a Negro in his late twenties, "fairly good size," approximately six feet two inches, wearing a "white or light colored rain coat * * * not necessarily perfectly white," a dark broad brimmed hat, and dark slacks. The police traced the car through the license number and the stole was discovered in its back seat. The car was not appellant's and had been driven to the scene of the crime by James Short.[2]

Later during the day Krause went to the police station where appellant was detained. He identified appellant in the following circumstances:

Q. Now, Mr. Krause, talking about having come down to the No. 7 Precinct at twelve o'clock Saturday, March 19; when you came to the Precinct did the officer there take you in to look at a lineup of a number of people?

A. No, it was one person.

Q. But were there a number of people?

A. No, there was one police officer and one nonpolice officer at the time.

Q. And was this person standing or seated?

A. He was seated. Well, I will redefine that. I believe he was standing up.

Q. When you saw this person, what did you say?

A. Nothing.

Q. You saw the person and did nothing?

A. I wasn't supposed to talk. I was merely asked to look at him.

Q. And can you tell me what happened after that?

A. After that?

Q. Yes.

A. I went back home.

Q. Did you talk to anybody? Anybody at the police station, before that?

A. Well, he asked me if I thought the person I saw in the room was the same person that I had seen at the scene of the crime, and my answer was yes.

Q. You didn't say it in the room when you were in there, did you?

A. What do you mean?

Q. Well, I assume you went in there to identify this man.

A. Well, I didn't walk right up to the man, but when we came out he asked me if it was the same person that I had seen at the scene of the crime, and I told him yes.

2. Short, but not Krause, also testified at appellant's first trial. His testimony in the record before us is that on the evening of March 18, 1966, he was approached at his work by appellant whom he had never seen before and who offered him $200.00 for the use of his car that evening. They met at the car and Short drove appellant to several locations as requested, at one of which appellant returned with another man and both got in the car. After this, at appellant's direction, Short drove to the location of the fur store where the breaking-in and theft occurred. He testified further that he drove off and left appellant and the other man at 15th and Florida Avenue, with appellant leaving the fur in the car and advising Short he would meet him that morning around nine o'clock at Seventh and Kennedy Streets and would give him the $200.00. After returning to his home, Short noticed lights coming across from where he was parked and, assuming that police were approaching, he ran to his cousin's house a block and a half away. His father came there and the two went to the Seventh Precinct where he told the above story. With the police he went to the Seventh and Kennedy Street rendezvous but appellant did not appear. Later that morning the police with Short saw appellant in front of Short's working place. The police then arrested appellant. Short was not prosecuted.

Q. Who did you mention this to?

A. To the police officer.

Q. Do you remember which police officer it was?

A. Well, we were directly outside the room.

Q. What did you say?

A. I told the officer that that was the person I saw with the fur. (Tr. 31–32)

A detective testified as to the Krause identification at the police station as follows:

Mr. Krause came down to look, and Sidney Gross was sitting there, and I told him to stand up and Mr. Gross stood up, and he said that was the man he saw getting into the car, and he identified him as the man. (Tr. 125–126)

■ The trial was, of course, held prior to *Stovall*, and the circumstances of the lineup were not developed by reference to that case. What emerges from this testimony is an apparent instance of what the Supreme Court referred to in *Stovall* as "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup," and which, the Court added, "has been widely condemned." Whether a due process violation in fact occurred here should, we think, be the subject of a specific inquiry by the District Court on remand, culminating in findings of fact and conclusions of law.[3]

■ As to appellant's contention that we should direct dismissal of the indictment because of the delay in preparation of the transcript, we think this problem is better left for the District Court to consider in terms of the Sixth Amendment right to a speedy trial in the event

appellant's conviction is ultimately reversed and the prosecutor elects to seek a new trial despite the degree to which appellant has already served the invalidated sentence. This was the course followed by this court *en banc* when it had a similar problem in Hines v. United States, 133 U.S.App.D.C. ——, 408 F.2d 1230 (decided December 6, 1968).

The case is remanded for further proceedings as contemplated in this opinion.

It is so ordered.

FAHY, Senior Circuit Judge (dissenting in part and concurring in part):

I do not think a remand is required for a determination of the due process question involved in Krause's confrontation of appellant at the police station, that is, to inquire further whether the confrontation there "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed. 1247. It is there stated also that this standard accords with the Court's previous resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. In *Simmons* the Court decided the due process issue on the trial record, as this court, *en banc*, also did with respect to the cell block confrontations in Clemons v. United States, 133 U.S.App.D.C. ——, 408 F.2d 1230. I think we should do the same in this case. As the court's opinion demonstrates we have a full statement of the facts about the police station confrontation, with corroborative testimony from a detective who was an eye witness to what occurred there. Neither party to the case intimates the availability of any new light.

3. The District Court will also address itself on remand to the question of whether, assuming that the pretrial confrontation was defective under due process, Krause's identification testimony was properly admitted as having an independent source. *See* Clemons v. United States, note 1 *supra*, 133 U.S.App.D.C.

——, 408 F.2d 1230. If that testimony should prove to be fatally tainted—and we are not to be taken as suggesting that it is—it would appear that no formulation of a harmless error standard could, on this record, dispense with the necessity of a new trial.

The facts referred to in the court's opinion show that the pre-trial confrontation lacked the safeguards against a mistaken identification which accompany a properly conducted lineup.[1] Appellant was presented alone to Mr. Krause as a single police suspect. This is like the instance the Supreme Court characterized in *Stovall* as follows: "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. at 302, 87 S.Ct. at 1972 (footnote omitted).[2] Moreover, the Krause testimony as a whole has the same feature which gave rise to the "per se exclusionary rule" of Gilbert v. California, 388 U.S. 263, 272–273, 87 S.Ct. 1951, 18 L.Ed.2d 1178, for it included a statement before the jury that he had identified appellant prior to the trial.[3]

There is no way to demonstrate with absolute certainty that the police station confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellant] was denied due process of law." *Stovall, supra* at 302, 87 S.Ct. at 1972. It is certain, however, that the confrontation was suggestive, and was unnecessarily so. No explanation occurs for the manner in which it was arranged. Being suggestive it was conducive to mistaken identification, and in the totality of the circumstances its conducive character I think cannot reasonably be deemed reparable. Mr. Krause's opportunity at the scene of the crime to identify the thief was limited. *Compare* Wright v. United States, 131 U.S.App.D.C. 279, 404 F.2d 1256, *with* Hemphill v. United States, 131 U.S.App.D.C. 46, 402 F.2d 187, 192. It occurred before daylight from some distance away. Looking from above he saw a man in a broad-brimmed hat, and only briefly. When testifying about the police station identification he did not refer to any of the man's characteristics which he had said he had noticed at the scene of the crime. In at least one respect he qualified that earlier identification, "Well, I thought the person looked younger than he actually turned out to be."

The curious testimony of James Short at the first trial,[4] and in whose car the fur stole was found, did not persuade the jury of appellant's guilt,[5] indicative of the importance of Mr. Krause's testimony at the second trial and, therefore, of the care with which its trustworthiness should be considered under the due process standards of *Stovall* and *Simmons*. A reasonable application of these standards I think requires us to hold that the confrontation fell short of meeting them. There is no reason to believe that after the passage of two years any reliable additional information is available as to what there transpired. *Compare* Sera-Leyva v. United States, 133 U.S.App.D.C. ——, 409 F.2d 160.

---

1. As to the suggestibility of pre-trial identifications see the authorities arrayed in United States v. Wade, 388 U.S. 218, 229 n. 7, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

2. The identification in *Stovall* of a single suspect was held not to violate due process of law because in the totality of circumstance there the Court said an immediate hospital confrontation by the critically injured victim was imperative.

3. In *Clemons* this court noted that it "makes little sense to reverse a conviction on the basis of a *per se* exclusionary rule expressly intended to operate as a deterrent." (Footnote omitted.) However, this function of prospective deterrence is but a corollary to the main thrust of the *Gilbert, Wade* and *Stovall* cases. The *Gilbert* due process sanction, even in its retrospective operation as determined in *Clemons*, seeks to make effective the fundamental constitutional guarantee of a fair trial. *Gilbert, supra* at 274, 87 S.Ct. 1951. See also dissenting opinion of Mr. Justice Douglas in Biggers v. Tennessee, 390 U.S. 404, 409, 88 S.Ct. 797, 19 L.Ed.2d 1267, *affirmed by an equally divided Court.* See footnote 6, *infra.*

4. Mr. Krause did not testify at the first trial.

5. See footnote 2 of the court's opinion.

Under *Clemons*,[6] however, notwithstanding the police station confrontation might be found on the remand, as I find now, defective under due process, if it can be shown to have had an independent source the taint of its illegality is removed sufficiently to support the admissibility of the identification which resulted. On this record, however, I do not see how it can be said there was an effective independent source. The only possible other source was the single incident of Krause seeing the man across the street with the white stole in the circumstances I have set forth. Perhaps he could identify the man by that incident. His testimony to that effect would of course be admissible and if believed by the jury would result in a conviction. But the suggestive confrontation at the police station cannot in my view free the resulting identification there of the effect of that suggestiveness. In *Clemons* the factual situation affecting the issue of the independent source of the cell block identifications is distinguishable. Several possible sources were available, as pointed out by the court in its opinion in that case.

It accordingly seems to me we should hold that it was error to admit during the direct testimony of the Government the evidence of the police station identification, tainted by the confrontation there which was defective under due process. This would require a new trial at which that evidence would be excluded. The in-court identification itself would not cure the error because in the minds of the jurors it necessarily would be shored up by the testimony of the same witness that he had identified appellant at the police station. In any event the combination of the two would taint the conviction. Here, in contrast with *Clemons*, there was no identifying testimony except that of Krause,[7] though the fact of his identification at the police station was testified to by a detective who witnessed it, thus increasing by this verification the prejudice of its admission.

The end result of my conclusion that the police station confrontation was defective under due process is that the conviction should not be held to be free of prejudicial error. I understand from footnote 3 of the court's opinion this would be the court's position if the remand should result in a like conclusion as to the police station confrontation and a finding that the in-court identification was tainted by it. I should also think, though this cannot be a basis for decision, that the over-all expenditure of judicial effort in the end would be no greater were the clear-cut course of a new trial adopted now, rather than the course which in all probability will result from the remand, accompanied too as it will be by the shadow of an erroneous conviction if it does not result in a new trial.

In the event the remand results in setting aside the conviction I think the disposition by this court of appellant's contention that we should direct dismissal of the indictment because of the delay in preparation of the transcript is appropriately left to the District Court in the first instance.

---

6. As a Senior Circuit Judge I did not participate in the *Clemons* and accompanying *en banc* cases.

7. See opinion of Mr. Justice Douglas in Biggers v. Tennessee, note 3 *supra*, dissenting from affirmance by an equally divided Court, and *Gilbert*, *supra* at 272 n. 3, 87 S.Ct. 1951.