### Calvin F. SMITH, Appellant,
### v.
## UNITED STATES of America,
### Appellee.
### No. 20773.

United States Court of Appeals
District of Columbia Circuit.

Argued May 9, 1968.

Decided June 7, 1968.

Certiorari Denied May 26, 1969.
See 89 S.Ct. 1780.

Petition for Rehearing Denied
July 5, 1968.

---

thereby. Since the issue was not raised in the District Court, with the result that the factual picture is incomplete, we remand this case for the taking of such evidence and the making of such findings as may be appropriate, using the criteria announced in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968),[*] and applying the principles announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See also* Wright v. United States, 131 U.S.App.D.C. 279, 404 F.2d 1256 (No. 20,153 decided January 31, 1968). Jurisdiction of this appeal is retained by this court.

Remanded.

Mr. C. Frank Reifsnyder, Washington, D. C. (appointed by this court), for appellant.

Mr. David A. Clarke, Jr., Atty., Department of Justice, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

## PER CURIAM:

The primary issue raised by this appeal, and plausibly tendered by circumstances the record discloses, is whether the police procedures used in the pretrial photographic identification of appellant by the robbery victim violated due process and, if so, were the lineup and in-court identifications of appellant tainted

PRETTYMAN, Senior Circuit Judge (dissenting).

I would affirm. I think my brethren misconceive the intent and purpose, and therefore the meaning, of the Supreme Court in the Wade,[1] Gilbert,[2] Stovall,[3] and Simmons[4] cases. Simmons was the fourth and latest in the series on this subject. In it the Court did not merely cite its prior rulings but developed the thesis at some length. Therefore the opinion can reasonably be taken as a careful summation of a developed doctrine. In that opinion the Court said:

"We are unwilling to prohibit its employment [the use of photographs], either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that

[*] These criteria include (1) the necessity to use photographs for identification; (2) the number of photographs of different persons used in the identification procedure; and (3) the information or instructions, if any, given by the police to the identifying witness immediately prior to the identification.

[1] United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

[2] Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

[3] Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

[4] Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [5]

There was no dissent in the *Simmons* case. Mr. Justice Black, concurring separately, was even more emphatic than was the majority of the Court. He pointed out that inferences to be drawn from the testimony of identifying witnesses are a matter of weight for the jury, not for a reviewing court, and he labeled the due process question there raised "frivolous". The Court held that a claim that an identification procedure is so unduly prejudicial as fatally to taint a conviction "must be evaluated in light of the totality of surrounding circumstances." Mr. Justice Black was of opinion that the Court has no such "wide-ranging, uncontrollable power." The Court stressed the eyewitness identification and the certainty of the witnesses under cross-examination. It said "there was in the circumstances of this case little chance that the procedure utilized led to misidentification of Simmons."

When the Court, in the four cases just cited, listed various possible erroneous steps in an identification procedure, it was not erecting a series of obstacles for a prosecutor to surmount in every case by proof. When it said, for example, that improper employment of photographs "may sometimes" cause a witness to err, or "there is some danger" or "[t]his danger will be increased" if such-and-such happens, the Court did not mean, as I read the opinions, that a prosecutor bears the burden of disproving in every case all the potentialities mentioned by the Court. For example, I think the Court did not intend that convictions where there is solid eyewitness courtroom identification should depend starkly upon whether a photograph used by the police in their search for the criminal contained the likenesses of two people or of fifteen; it is not necessary, as I see it, for the prosecutor to prove in every case how many people are in every photograph used or to persuade the trial judge that the number was reasonable (beyond a reasonable doubt, I suppose). My notion is that the Court meant to be vivid and emphatic in alerting trial judges to watch carefully for every possibility of a misidentification, no matter by what process effected; but at the same time the Court was telling trial judges not to impede reasonable processes of identification. Eyewitness identification at trial following pretrial identification by photograph will be set aside, the Court said, *"only"* if the photographic use was *"so impermissibly suggestive* as to give rise to a *very substantial likelihood* of *irreparable* misidentification."* (Emphasis supplied.) I am impressed by the strong expressions used by the Court, buttressed by the vehement view of Mr. Justice Black.

I should in all honesty confess that, when the Supreme Court says a conviction should be set aside only if a given procedure is "impermissibly suggestive", I derive an impression of an intimation that a procedure may be permissibly suggestive and that a conviction is not to be set aside for such a flaw. Similarly I derive impressions from the adjectives appended to "likelihood" and "misidentification".

In the case before us the complaining witness was a middle-aged male, an official of the Canadian government, on active duty at the Embassy here. He looked at the robber down the barrel of a gun for a noticeable period on a well-lighted street. He testified,[6] *inter alia,*

---

5. *Id.* at 384, 88 S.Ct. 971.

6. For example, at preliminary hearing, on direct examination the witness said: "This was the man who held the gun and with whom I had the conversation which I have described." And on cross-examination the testimony was, in part:

"Q How long a period of time did you look at the pictures?

"A One minute.

that he consciously noted the robber's features for possible later use in identification. He described his assailant to the police when they arrived on the scene. He identified the appellant clearly, positively and emphatically. He identified him from a photograph, again in a lineup, and again in the courtroom. He was unshaken by cross-examination. In addition, among the "totality of surrounding circumstances" which bear upon the possibility of misidentification, is the fact that when arrested the appellant had in his pocket a number of credit cards belonging to this victim.

I think Wright v. United States [7] is not apposite. The events there involved were totally different from those now before us. Principally there was no on-the-spot confrontation between the witness and the robber and "no lineup, in the commonly accepted sense of the word". The identification there was quite possibly the product of various circumstances. Wright was put on display before an uncertain witness familiar only with the car and the general physical characteristics of the two robbers. Moreover *Wright* was promulgated before *Simmons* and should be reexamined in light of the Supreme Court's opinion in that case before it is used as precedent by this court.

In my opinion, with all deference to my brethren, the remand of this case for further findings by the District Court (involving, of course, further hearings and possibly further evidence-taking) is directly contrary to clear and emphatic directions of the Supreme Court.

*     *     *     *     *
"Q Which ones did you recognize?
"A I said I recognize this picture, pointing to the picture of that man.
"Q Which man?
"A Smith. Calvin Smith. As the man who accosted me and pointed a pistol at me and held the conversation with me that I described."
On cross-examination at trial the witness testified:
"Q Now, you testified that there was a weapon that was pointed at your body. Now, would you tell the Court and jury which part of your body this weapon was pointed towards?
"A Yes. It was held about six inches or less away from my chest on the right side.
"Q In other words, you were facing the person?
"A Yes.
*     *     *     *     *
"Q And which man was actually holding the revolver, sir? You said there were two men.

"A Yes. Calvin Smith was holding the revolver.
*     *     *     *     *
"Q Were you not in fact in doubt about his identity?
"A I was in no doubt whatsoever.
*     *     *     *     *
"Q And what is the condition of the lighting in that area, sir?
"A Very good. I have returned to verify that.
*     *     *     *     *
"Q Did you have your eyes and your attention focused on the revolver throughout the entire period when you were held up?
"A No, I did not. I was conscious from the beginning of the need to identify the man if I had the opportunity, so I made a particular effort to insure that I would be able to remember him."

7. 131 U.S.App.D.C. 279, 404 F.2d 1256 (No. 20153, Jan. 31, 1968).