**UNITED STATES of America ex rel. Gilbert BATES, Petitioner,**

v.

**Vincent R. MANCUSI, Superintendent of Attica Correctional Facility, Attica, New York, Respondent.**

**No. Civ. 1971–460.**

United States District Court, W. D. New York.

May 29, 1973.

Gilbert Bates, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, for respondent.

CURTIN, District Judge.

In 1968 after a trial by jury in Erie County Court at which a codefendant was acquitted, petitioner Gilbert Bates was convicted of robbery in the first degree and sentenced to a term of imprisonment of ten to fifteen years. His conviction was affirmed without opinion by the Appellate Division, Fourth Department, People v. Bates, 34 A.D.2d 1104, 313 N.Y.S.2d 1005 (1970), and leave to appeal to the Court of Appeals was denied. Petitioner now seeks a writ of habeas corpus from this court on the grounds that (1) the in-court identification of him by three prosecution witnesses was tainted by improper pretrial identification procedures, and (2) the testimony of the three witnesses was insufficient to support a conviction.

The basic facts relating to the crime for which petitioner was tried are as follows. At approximately 1:30 P.M. on June 21, 1967, while Meyer Schanker was working as a clerk in the Columbia Liquor Store located at 268 Genesee Street, Buffalo, New York, two men entered the store and walked up to the counter. One of the men ordered and paid for a fifth of wine. After asking for a pint of wine and tendering a dollar bill in payment, the other man jumped over the counter, stabbed Schanker with a knife, pushed him into a corner and motioned the first man toward the cash register. When the cash register wouldn't open, Schanker's assailant shoved him over to it. After Schanker opened the register, the first man scooped out the money, the second pulled the knife out of Schanker and they both ran from the store.

Two men present in the vicinity of the Columbia Liquor Store saw the participants in the robbery just before and just after the occurrence of the crime. Arthur Lee was standing on Genesee Street across from the liquor store when he was approached by a man who asked him for fifteen cents. He replied that he had but twelve cents and gave the man that amount. The man joined another man and went into the liquor store. Shortly thereafter, Lee saw the two men run out of the store and turn first down Spruce Street, which intersects Genesee Street, and then down Sycamore Street, which runs parallel to Genesee. Lee then went into the store, where he saw a policeman and Schanker, and bought a bottle of wine.

Willis Copeland was sitting on his front porch at 133 Spruce Street when he noticed a man pass his house walking toward Genesee. Just after the man passed, Copeland saw him pull out a switch-blade knife, open it and hold it in his hand. Copeland then observed the man cross Spruce Street and join another man, with whom he turned onto Genesee Street in the direction of the Columbia Liquor Store. About ten or fifteen minutes later, Copeland saw the men run past his house toward Sycamore Street.

Informed prior to the commencement of petitioner's trial that the prosecution would offer identification testimony by Schanker, Lee and Copeland, the court, on May 13, 1968, held a hearing out of the presence of the jury to determine the admissibility of the testimony.

The facts relevant to identification which were revealed at the hearing are as follows.

While waiting on the two men prior to the assault, Schanker did not pay particular attention to them, except to notice that they were Negroes. When the attack occurred, he noted his assailant was the taller of the men and wore an odd-colored, perhaps yellow, shirt, while the man who rifled the cash register wore a red shirt. After the assault, he was face-to-face with his assailant but was unable to view the other man. Schanker's description of the robbers given to the police who responded to his call for help contained the aforementioned facts about their height and clothing, but no details about their facial features. On July 18, 1967, Schanker was in the City Court of Buffalo for a preliminary hearing in petitioner's case. The hearing was adjourned for two days, but, before Schanker left the courtroom, a policeman pointed out a man to him and told him to "take a good look at him" [the man]. Schanker got close to the man, who was petitioner, and identified him as his assailant.

On the day of the robbery, Lee gave to the police a statement which described the man who asked him for money outside the Columbia Liquor Store as "C [colored]—early 30's—5'11" to 6'—160 to 165 lbs.—dark complexion—short hair, black color" and as wearing "a yellow short sleeve sport shirt." He described the other man as "C—about the same age as the number one man—5'9" to 5'10"—175 lbs.—short black hair" and as wearing "a red short sleeve sport shirt." During the evening of the same day, Lee was taken to the Fourth Precinct police station, where he saw petitioner seated at a desk in a room with several white policemen and identified him as the man who had approached him for money outside the liquor store.

Of the two men Copeland saw pass his house on June 21, 1967, the one who carried the knife passed directly in front of the house, while the other was on the opposite side of the street. The one passing close to the house was the shorter of the men and wore a red shirt. The other wore a yellow shirt. During the evening of the same day, Copeland gave to the police a description which did not give details beyond the foregoing. The next day Copeland was taken to the Fourth Precinct police station, where, through a one-way mirror, he viewed petitioner dressed in a light-colored suit in a room with two white policemen. On June 23, 1967, Copeland again viewed petitioner through a one-way mirror, this time at Police Headquarters with petitioner dressed as the day before, seated alone in a room. Each time he identified petitioner as one of the men he had seen on June 21.

At the pretrial identification hearing, Schanker identified petitioner as his assailant, and Lee and Copeland identified him as one of the men they had seen before and after the robbery. The witnesses were cross-examined on their identifications and their capacity to make them. Thus, it was revealed that Lee had been drinking the morning of the robbery and that the man who passed Copeland's house had not pulled the knife until he was just past the house. At the conclusion of the hearing, the court ruled that testimony relating to the pretrial out-of-court identifications of petitioner by Schanker, Lee and Copeland would be inadmissible at trial because made in the absence of counsel representing petitioner. The court ruled also that in-court identifications of petitioner by all three witnesses would be allowed at trial, stating as follows:

> The People have established beyond a reasonable doubt that the in-Court identification of the defendants will be based solely upon the observations of the witnesses. And the People have demonstrated by clear and convincing evidence that the in-Court identification can be made and based on observations of the witnesses other than those made for the police authorities.

▪ Under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d

1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), an accused has the right to counsel at a confrontation with a witness conducted by law enforcement officials once an adversary judicial proceeding has been commenced against him. The occurrence of a pretrial confrontation resulting in an identification of the accused by the witness does not automatically mandate the exclusion of an identification made at trial, however. The in-court identification is still admissible if the government can establish by clear and convincing evidence that it was based upon observations of the defendant other than at the improper confrontation. United States v. Wade, *supra*, 388 U.S. at 240, 87 S.Ct. 1926; United States ex rel. Cummings v. Zelker, 455 F.2d 714, 716–717 (2d Cir. 1972); United States v. Famulari, 447 F.2d 1377, 1380 (2d Cir. 1971); United States v. Ayers, 426 F.2d 524, 527 (2d Cir. 1970).

 Assuming, as the trial judge ruled that testimony about the pretrial identifications of petitioner was inadmissible at trial because the identifications were made at showups conducted in the absence of counsel,[1] this court is satisfied the trial judge did not err in concluding that the prosecution had carried its burden of showing a source for the in-court identifications independent of the showups. Although he would have been justified in a finding either way on this issue, his finding is fairly supported by the record of a full and fair hearing and is therefore entitled to presumptive validity in a habeas corpus proceeding. *See* 28 U.S.C. § 2254(d).

The crime was committed in broad daylight, and Schanker's testimony that he was face-to-face with his assailant indicates that he was able to get a good look at petitioner's face. As the victim, he was certainly motivated to make as careful an observation of his assailant as possible. Lee and Copeland likewise had both an opportunity to observe the participants in the crime and a reason for doing so—Lee because the man he identified as petitioner asked him for money and Copeland because he saw one of the men pull out a knife as they passed his house. *See* United States ex rel. Phipps v. Follette, 428 F.2d 912, 915 (2d Cir. 1970). While none of the witnesses gave detailed descriptions of the men they saw and there is no indication that they were ever shown any other suspects prior to being shown petitioner, the initial identifications by Lee and Copeland were made within a day of the robbery, when accuracy in identification would be more likely than if the showups had occurred much later. *See* United States ex rel. Williams v. LaVallee, 415 F.2d 643, 645 (2d Cir. 1969). Although Schanker's identification was not made until after his release from the hospital to which he had been admitted for treatment of the wounds he had suffered during the robbery, it was not made so long after the crime and so close to the trial as to have tainted his in-court identification. *See* United States ex rel. Phipps v. Follette, *supra*, 428 F.2d at 915; United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2d Cir.) cert. denied, 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969) (identification occurred ten days after crime). Compare United States v. Wade, *supra* (suspect not identified until almost seven months after bank robbery). The impression

---

1. Presumably, although it is not clear from the record, the showups of petitioner to Lee and Copeland occurred after the issuance of a warrant of arrest under Section 144 of the former New York Code of Criminal Procedure. If this was the case, petitioner should have been given the right to have counsel present, for the issuance of such a warrant is the initia-

tion of an adversary judicial proceeding within the meaning of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). See United States ex rel. Robinson v. Zelker, 468 F.2d 159, 163 (2d Cir. 1972). It goes without saying that the showup of petitioner to Schanker in the City Court of Buffalo constituted a violation of the right to counsel.

that the witnesses' identification of petitioner was grounded in their initial observations of him and not in the subsequent showups is buttressed by the facts that not merely one of them, but all three, identified him, *see* United States ex rel. Anderson v. Mancusi, 413 F.2d 1012 (2d Cir. 1969); Sera-Leyva v. United States, 133 U.S.App.D.C. 125, 409 F.2d 160, 162 (D.C.Cir. 1969), and that two of the three declined to identify petitioner's codefendant as a participant in the robbery. *Cf.* United States ex rel. Cummings v. Zelker, 329 F.Supp. 4, 8 (E.D.N.Y.1971), aff'd, 455 F.2d 714 (2d Cir. 1972). Finally, each witness' in-court identification of petitioner was unequivocal and accompanied by positiveness that the identification was independent of prior suggestion, positions which were unshaken by cross-examination both at the pretrial hearing and at the trial itself. *See* United States ex rel. Cummings v. Zelker, *supra*, 455 F.2d at 717.

■■ Petitioner's second contention may be disposed of in short order. It is that the testimony of the three witnesses was insufficient to support a conviction. The sufficiency of evidence presents a constitutional issue cognizable in a habeas corpus proceeding only if the conviction is so devoid of evidentiary support that a due process problem is raised. *See* United States ex rel. Terry v. Henderson, 462 F.2d 1125, 1131 (2d Cir. 1972). As indicated by the facts previously recited, the testimony of the three witnesses provides substantial support for petitioner's conviction. No due process problem is therefore presented in the instant case, and petitioner's second claim must be rejected.

Petitioner's application for a writ of habeas corpus is denied.

Certificate of probable cause is denied.

Permission to appeal in forma pauperis is also denied, with the qualification that the petitioner may file with the Clerk of the United States District Court, United States Court House, Buffalo, New York, a notice of appeal, without the payment of filing fees.

This denial does not prevent the petitioner from applying directly to the Court of Appeals for the Second Circuit, United States Court House, Foley Square, New York City, for a certificate of probable cause, and for permission to prosecute an appeal in forma pauperis.

So ordered.