**UNITED STATES of America ex rel. Charles ANDERSON, Petitioner-Appellant,**

v.

**Vincent R. MANCUSI, Warden of Attica State Prison, Respondent-Appellee.**

**No. 629, Docket 32470.**

United States Court of Appeals Second Circuit.

Argued June 9, 1969.

Decided July 17, 1969.

Henrietta M. Wolfgang, Buffalo, N. Y. (The Legal Aid Bureau of Buffalo, Inc., Bruce K. Carpenter, Buffalo, N. Y., on the brief), for petitioner-appellant.

Michael Jaffe, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

In December, 1964 the petitioner, Charles Anderson, was convicted in Erie

County, New York, after a jury trial, of the crime of grand larceny in the second degree, and was sentenced as a second felony offender to a term of from 5 to 10 years. Having exhausted his state remedies, he applied to the United States District Court for the Western District of New York for a writ of habeas corpus on the ground that the identification procedures used by the police were "unnecessarily suggestive" under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Judge Burke denied the writ, and this appeal followed. We affirm.

The petitioner was picked up by Buffalo police in connection with the theft of a purse. The complainant, Mrs. Irene Szuniewicz, testified that she was sitting in a parked car when a man reached through an open window and grabbed her purse. She described him as a colored man with a big mustache, and said he was wearing a red short-sleeved shirt and a small beret. There was a struggle for "maybe half a minute." The man took the purse and ran down Broadway into Blossom Alley, and the complainant gave chase. Two men from a nearby truck observed a man running toward them, and then heard the complainant shout, "Stop him, he has got my purse." They joined in the chase, but the man managed to elude them. Shortly afterwards the police picked up petitioner approximately four blocks from where the incident occurred. He was wearing a red shirt and dark trousers. He had a mustache.

When the complainant arrived at the police station, she was shown where petitioner was sitting and was told, "This is the man we picked up." She positively identified petitioner as the man who took her purse, and her identification was further corroborated by the two men from the truck. One identified petitioner as a result of a "showup" in a cell at the police station, while the other made a positive identification after petitioner was brought to him in a police car. All three identifications were made within approximately one hour of the theft.

In United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court observed that "[a] major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification," and held that pretrial identification procedures in the absence of counsel violate the Sixth Amendment. The pre-trial identification rules announced in *Wade* have not been given retroactive effect, however, Stovall v. Denno, *supra*, and thus the relevant inquiry in pre-*Wade* cases, such as this case, is to ask whether the pre-trial confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law. 388 U.S. at 302, 87 S.Ct. at 1972. See also United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2d Cir. 1969).

We are satisfied that in the factual surroundings of this case the identification procedure used by the police was not such as to create a likelihood of irreparable misidentification. The crime was committed in broad daylight, and the complainant testified that she had been able to get a good look at the face of the man who took her purse. The truck drivers gave similar testimony. Cross-examination did not establish otherwise. The identifications took place less than an hour after the crime, and thus it can fairly be said that the witnesses' recollections were fresh. This is a factor tending to assure reliability. Bates v. United States, 405 F.2d 1104 (D.C.Cir.1968); Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), cert. denied 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968). On the facts here there can be no question that the identification was prompt, compare United States v. Wade, *supra* (suspect not identified until almost seven months after bank robbery), and certain,

compare Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (April 1, 1969) (witness could not make positive identification after seeing suspect in lineup and then showup). Although one trucker said that the red shirt "stood out like a neon sign," it does not appear that this had an unduly suggestive effect on the witnesses. They said that they had been able to observe the physical appearance of the man they had seen running, and they made in-court identifications when petitioner was not wearing the red shirt.

The judgment is affirmed.