UNITED STATES of America ex rel.
Leroy WILLIAMS, Relator-
Appellant,

v.

J. Edwin LaVALLEE, Warden of Clinton
Prison, Dannemora, N. Y., Respondent-
Appellee.

No. 623, Docket 33160.

United States Court of Appeals
Second Circuit.

Argued June 4, 1969.

Decided Sept. 10, 1969.

Thomas F. Daly, New York City, for relator-appellant.

Arlene R. Silverman, Deputy Asst. Atty. Gen., of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen., for respondent-appellee.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

At approximately 2:20 A. M. on May 5, 1966, armed Negro bandits robbed the Western Union office on Hunts Point Avenue in the Bronx, New York. Several minutes later, two New York City police officers, Patrolman Francis Murphy and Sergeant Frank Basile, cruising in a police radio car in the precinct adjacent to the one in which the robbery occurred, heard an alarm broadcast informing of the holdup. A second broadcast shortly followed in which the perpetrators of the robbery were described as two male Negroes who had escaped in a light colored late model automobile, possibly a yellow Ford. Just prior to hearing this

second alarm the policemen had observed a white Oldsmobile occupied by two males traveling away from the area where the reported robbery had taken place.

The officers followed this vehicle for several blocks. While doing so Sergeant Basile asked for a further description of the robbers from the Police Communications Bureau. The response received described them as two male Negroes, one wearing a short white coat, the other a dark coat. The officers observed that the occupants of the white Oldsmobile fitted this description. As the police cruiser came abreast of the Oldsmobile Sergeant Basile ordered the driver to pull over. At first the order was disregarded, but the second time it was given it was obeyed.

When the officers approached the car they saw that both of the occupants had guns. The two men were arrested for unlawful possession of weapons. The defendants were immediately searched, and Patrolman Murphy took from them two five dollar bills, $11.37 in loose change, and several rolls of coins. Rolls of coins were also discovered on the front seat of the car. Subsequent investigation disclosed that the vehicle occupied by defendants had been reported to the police as having been stolen.

The two men were then taken to the stationhouse and were placed in a room with several detectives, none of whom were Negro. The Western Union clerk from the robbed office was brought into the room and he made a positive identification of the two men as the men who had committed the robbery. This identification was made less than an hour after the event. On the following day, the clerk picked the same men out of a lineup and he also identified them as the robbers at the trial.

The two men were tried in the Supreme Court, Bronx County, New York. The clerk testified that the robbery took from three to four minutes. He said that the two armed men entered and demanded all

the money in the office, and that they also told him to make out four American Express money orders for $25.00 each. He appeared to comply but actually quite coolly made out the orders for only 25 cents each. He testified that the robbers fled in a yellow Oldsmobile.[1] The money the officers found on the defendants and in the car at the time of the arrest corresponded to the amount stolen, and was admitted into evidence at the trial.

The two men were convicted of robbery in the first degree, of grand larceny, of felonious possession of a dangerous weapon, and of assault. The longest of their concurrent sentences was one of fifteen to thirty years. The conviction was affirmed on appeal, People v. Alston, 30 A.D.2d 641, 291 N.Y.S.2d 772 (1968). Leave to appeal to the New York Court of Appeals was denied.

Having exhausted his state remedies, the appellant in this case, Leroy Williams, sought a writ of habeas corpus in the United States District Court for the Northern District of New York. His habeas petition alleged that (1) the police station identification violated the due process clause of the Fourteenth Amendment; (2) there was no probable cause for the arrest; and (3) even if there were probable cause the search and the resulting seizure of the guns and coins was unlawful. Judge Foley denied the writ and we affirm.

The challenged identification occurred before the United States Supreme Court decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) so the standard that must be applied to the identification procedure is that of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). This court stated in United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2 Cir.), *cert. denied,* 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969) that an identification violates due process only

---

1. The clerk testified that the bright fluorescent lights of the office might have made the Oldsmobile appear to be yellow.

when " 'on the totality of the circumstances surrounding' the confrontation" it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 406 F.2d at 218. As was indicated in *Rutherford* and subsequent cases, see e. g. United States ex rel. Davis v. Follette, 410 F.2d 1135 (2 Cir. 1969), this is a very difficult test to meet.

The present case is similar to *Rutherford* in several particulars. In both cases a robbery victim who had had a relatively short time to view the robbers made an identification of Negro suspects in a situation where they were the only Negroes present. The appellant contends, and we concede, that there were several factors present in *Rutherford* not present here, and that those factors helped convince the court there that the identification of Rutherford was a reliable one. The most important of these distinguishing factors is the one that the victim in *Rutherford* could give a detailed description of the single robber while here the Western Union clerk could only describe the robbers as two Negroes, one wearing a white coat, one a dark coat. Also in *Rutherford,* the victim viewed several hundred photographs and on at least four different occasions saw other suspects whom she failed to identify; here there is no indication that the Western Union clerk was ever shown any other suspects prior to being shown the defendants.

■ Nevertheless, despite these differences, there is a factor present here which convinces us that there was no due process violation. Here, the identification was made almost immediately after the alleged robbery, not, as in *Rutherford,* several days later. Therefore, not only is the probable accuracy of the identification much more likely, but also as Judge (now Chief Justice) Burger has said, an immediate confrontation is desirable for it "may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh." Bates v. United States, 132 U.S.Ct.App.D.C. 36, 38, 405 F.2d 1104, 1106 (1968). This need of the police to know as soon as possible whether they have the "right man" justifies the identification procedure used here. It is also significant that the identifying clerk was not panicked during the robbery; he coolly made out the money orders for 25¢ each, not the $25 each he was ordered to do. Thus he could have just as coolly formed an accurate impression of the robbers in the three to four minutes that he saw them.

Appellant's reliance on the recent United States Supreme Court decision in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) is misplaced. In *Foster* the identifying witness could not pick out the defendant from a lineup even though his height and clothing made him stand out from the other man in it. Similarly, there, even when confronted with the suspect on a one-to-one basis, the identification was only tentative and it was only after viewing a second lineup several days later when the defendant was the only first lineup repeater that a positive identification was made. On the other hand, within one hour of the crime the witness here positively and without hesitation identified the two suspects as the robbers.

■ We also hold that there is no substance to appellant's claim that there was no probable cause to arrest him. Quite the contrary, the speedy apprehension of the robbers was a fine example of conscientious and commendable police work. We recently upheld a finding of probable cause for an arrest in a case similar to the present one. United States ex rel. Wilson v. LaVallee, 367 F.2d 351 (2 Cir. 1966). In *Wilson* the description of the getaway car was more accurate than the description of the car here and the direction of the escape route was indicated there and was not indicated here. However, there are factors in the present case which establish an equally strong basis for a justification

of the arrest. First, unlike the information in the *Wilson* bulletin the number of occupants in the pursued car here corresponded to the number given in the bulletin, and even more importantly the arrest was made at approximately 3:00 A.M. as opposed to a 10:30 P.M. arrest in *Wilson.* The arrest here was made at a time when the streets are much more deserted, the spotting of a wanted car much easier, and when it is much more likely that the car being pursued is the one sought. See United States ex rel. McCullers v. McMann, 370 F.2d 757, 759 (2 Cir. 1967). And of course as the occupants of the car fitted the description of the robbers, as the car was a light colored, late model automobile even if an Oldsmobile and not a "yellow Ford," and as the car, shortly after the crime, appeared to have come from the area where the reported robbery had occurred, probable cause for the arrest was more than established. The police officers in this case proceeded cautiously seeking as much information as possible, and after the final bulletin described the clothing worn by the robbers, it was incumbent upon them to move in and to detain the travelers.

Appellant's final claim is that the search of the car incident to the arrest was an illegal search. The U. S. Supreme Court has partially overruled two of its earlier decisions dealing with the legality of searches incident to an arrest.

Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), partially overruling United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). *Chimel* holds that a search without a warrant incident to an arrest can only encompass the person of the suspect and the surrounding area within his immediate control. Even if *Chimel* should be held applicable to state convictions that were final, as here, when *Chimel* was handed down, the search in the present case was proper.

Most of the incriminating evidence seized in this case came from the persons of the suspects. The evidence seized from the car was within the area of the immediate control of the suspects while occupying the car. Moreover, the items seized from the car were on the seat and obviously were within the plain view of the arresting officers. The rule is that "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed. 2d 1067 (1968), and cases cited therein. In the present case, as the objects seized from the car were on the seat, they were obviously in the officers' plain view.[2]

The refusal below to sustain the writ of habeas corpus is affirmed.

---

**2.** Although the Court in *Chimel* did not explicitly state that this rule is still good law, nothing in the opinion would indicate to the contrary. Furthermore, in *Chimel* the Court at one point did imply that objects in view were still seizable:

> There is no comparable justification, however, for routinely searching rooms other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. 395 U.S., at 763, 89 S.Ct. at 2040.

It would appear from this passage that the lack of a warrant invalidates searches of concealed areas only, and therefore the seizure of the items observable on the seat of the car was constitutionally permissible.