**UNITED STATES of America,**
**Appellee,**

v.

**Jose SANCHEZ, Appellant.**

**No. 459, Docket 34297.**

United States Court of Appeals,
Second Circuit.

Submitted Jan. 14, 1970.

Decided Feb. 25, 1970.

Milton Adler, The Legal Aid Society, New York City, Joel A. Brenner, New York City, of counsel, for appellant.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, William J. Gilbreth, Richard A. Givens, Asst. U. S. Atty., of counsel, for appellee.

Before KAUFMAN and FEINBERG, Circuit Judges, and PALMIERI,* District Judge.

FEINBERG, Circuit Judge:

Following a non-jury trial in October 1968 before Judge Constance Baker Motley in the United States District Court for the Southern District of New York, appellant Jose Sanchez was convicted of violating 18 U.S.C. § 1708 and sentenced to two years imprisonment.[1] He asserts three grounds for reversing his conviction and one for vacating his sentence. Finding none of them persuasive, we affirm the judgment of the district court.

The Government's case was a strong one. On August 1, 1968, a post office relay box, located on the corner of 124th Street and Park Avenue in New York City, was robbed. Although the stolen mail was never recovered, the Government established that August 1 was the day city welfare checks were distributed, and that five welfare recipients living at addresses served by the relay box did not receive their August 1 checks on that or any other day. Two eyewitnesses testified that they saw Sanchez and Jones tampering with the relay box and stuffing mail into a black bag. Ramon Vasquez, a New York City Special Patrolman, was off-duty at the time he witnessed the theft. He unsuccessfully attempted to follow the defendants as they left the scene of the crime. The other eyewitness was Paul Tyes, a professional boxer. He observed the crime while shooting dice with friends on 124th Street near Park Avenue. Accompanied by an old man named Zack, he followed the defendants to the subway, where Sanchez threatened them with a knife, but offered to return Zack's mail if he had it. Tyes told a Transit policeman what had happened, and when police in a patrol car arrived, Tyes rode with them for a few minutes until he spotted defendants at 124th Street and Third Avenue. The police arrested and searched defendants, and found a knife on Sanchez. On defendants' protestations of innocence, the police brought them back to the scene of the crime, which was only two blocks away. There they were identified by some of the street gamblers, friends of Tyes. This on-the-scene identification took place en route to the police station approximately 30 minutes after the crime, and almost immediately after the arrest.

Appellant's first point is that it was error to allow any testimony of the on-the-scene identification of him after he was arrested. Citing, *inter alia,* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), appellant claims that such testimony should have been excluded because of the absence of counsel at the time of the identification, because the circumstances surrounding it were "impermissibly suggestive," and because the testimony was inadmissible hearsay. The Government argues that

---

* Of the Southern District of New York, sitting by designation.

1. A codefendant, Kenneth Jones, was also convicted. He was given a suspended sentence and three years probation, but did not appeal his conviction. He has since violated his probation, and is now serving his sentence.

none of these points has merit, and that admitting this testimony in this non-jury case was harmless error at most, since Tyes had already pointed out both appellant and Jones to the arresting officers prior to the identification under attack. We conclude that it was not error for the trial judge to receive the evidence (most of which, we note, was adduced by trial counsel for Sanchez).

■ Like United States v. Davis, 399 F.2d 948 (2d Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1968), these facts "are a long way indeed" from *Wade* or *Gilbert.* As we said in *Davis,* we do not think those cases were meant

> to prevent an officer from making such a routine, uncontrived inquiry and to require that the victim and the bystanders be carted off to a police station, held on the spot until counsel could be provided, or dismissed until a lineup attended by counsel could be arranged at some later time.

*Id.* at 951. The prompt on-the-scene confrontation in this case was consistent with good police work. The defendants asserted their innocence when arrested; and within minutes of the arrest, on the way to the precinct house, the officers took the trouble to drive a short distance to insure "the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is fresh." Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106 (1968). Cf. United States ex rel. Frizer v. McMann, slip op. 1217 (2d Cir. Jan. 27, 1970).

■ Nor do we think that the on-the-scene identification was "impermissibly suggestive." See United States ex rel. Williams v. LaVallee, 415 F.2d 643, 644–645 (2d Cir. 1969). The police verified Tyes's identification of defendants by asking the street gamblers who came up to the patrol car if Sanchez and Jones were "the guys." Under the circumstances presented, we think this police conduct was reasonable and not overtly suggestive. We do not find it necessary to consider the hearsay argument, whatever its weight would be in a non-jury case, because of failure to make a proper objection below, United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966), and because of the active role of appellant's trial counsel in eliciting the testimony to which appellant now objects.

Appellant's next point is that it was error to allow the testimony of eyewitness Vasquez concerning a photographic identification of defendants before the grand jury, in the absence of defense counsel. Appellant contends that Vasquez should not have been permitted to so testify, and, moreover, that he should not have been allowed to make an in-court identification at all without a showing that his testimony was untainted by the photographs.

■ Assuming *arguendo* that appellant's failure to raise these arguments in the trial court does not foreclose him here, we are not persuaded in any event. The grand jury identification was first brought out in cross-examination by counsel for Jones, evidently in an attempt to impeach Vasquez's in-court identification. This tactic was at least acquiesced in by trial counsel for Sanchez, because no objection was made to the trial judge. While this might not be dispositive if there were a significant "taint" issue, we have held that *Wade* and *Gilbert* do not outlaw such photographic identifications. United States v. Bennett, 409 F.2d 888, 898–900 (2d Cir.), cert. denied, 396 U.S. 852, 90 S.Ct. 117, 4 L.Ed.2d 101 (1969). Counsel is not permitted in the grand jury room anyway, and appellant was given the transcript of Vasquez's testimony there.[2] Appellant also argues that Vasquez's in-court identification was tainted because the photographs were "impermissibly suggestive," claiming

---

**2.** The trial judge reversed a prior ruling admitting the Vasquez grand jury testimony into evidence. However, at no time was an objection made to Vasquez's in-court identification.

that out of 11 subjects photographed, only Sanchez had a beard. We have also examined the array, and the objection is not well taken. Facial hair was well represented in the photographs. Excluding Sanchez, there was one beard (smaller than Sanchez's goatee) and five moustaches. In order to select Sanchez's photograph, a witness would have to remember several of appellant's distinguishing features. Moreover, Judge Motley, as trier of fact, presumably took this possibility into account in evaluating the testimony of this eyewitness. Cf. United States v. Baker, 419 F.2d 83 (2d Cir., 1969).

Appellant also urges reversal because a black bag allegedly used to hold the stolen mail was admitted into evidence. The bag was located as a result of a statement appellant made to the police en route to the precinct house. The arresting officer testified that prior to the statement he told the defendants:

> You need make no statements without the presence of an attorney. You have the right to remain silent, that any statement you do make could be used against you. If you couldn't afford an attorney, an attorney will be provided for you, and did you understand what I said?

The trial judge ruled that this warning did not conform to the "strict requirements" of United States v. Fox, 403 F. 2d 97 (2d Cir. 1968). Nevertheless, the bag was admitted into evidence over objection of counsel.

■ We think that the warning given by the patrolman complied with the requirements of *Fox*, which, while intended to provide specific criteria concerning adequacy of warnings, was not designed to preclude all other combinations of words which effectively convey the same meaning. However, even accepting the district court's ruling as to the adequacy of the warning, the admission of the black bag into evidence, while erro-

neous, could scarcely be considered anything but harmless error, even under the rigorous tests of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). This non-jury case was a strong one for the Government, with two eyewitnesses, at least one of whom had ample opportunity to see the defendants at close range. Accordingly, we would regard the admission of the bag into evidence as harmless error were it necessary to rule on that basis.

■ Appellant's last point goes not to his conviction but to his sentence. He contends that a pre-trial statement, which would have been inadmissible in evidence at trial, was offered by the government and considered by the court at sentence. The statement referred to was appellant's admission to an Assistant United States Attorney that he

> got his money breaking open pay telephones, that he could make $100 per day between 11:00 A.M. and 1:30 P. M., and that he opened the phone coin boxes with a pair of metal strips, rather than a screwdriver, so that he could not be charged with possession of a burglar tool.

We have little doubt that this information might have influenced the sentence. But we see no reason why the trial judge should not have had the benefit of it. Appellant contends that he made the statement without being properly warned under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and United States v. Fox, *supra*. However, this argument is without merit; the warnings given appellant by the Assistant United States Attorney fulfilled the requirements of those cases. Moreover, although appellant's counsel knew that the quoted statement had been called to the attention of the trial judge for sentencing purposes, he did not object.[3] Appellant argues that *Mi-*

---

3. The quoted statement was contained in paragraph 4 of an affidavit submitted to the trial judge and apparently furnished to appellant's counsel, who objected only to material in paragraph 3.

*randa* applies to use by a judge of statements by an accused in connection with determining an appropriate sentence, relying on Verdugo v. United States, 402 F.2d 599 (9th Cir. 1968). While we in no way imply agreement with the reasoning of that decision, it is unnecessary under the circumstances to rule upon the issue.

Judgment affirmed.