UNITED STATES of America ex rel. Arthur BEYER, Petitioner-Appellant,

v.

Vincent R. MANCUSI, Warden, Attica State Prison, Respondent-Appellee.

No. 279, Docket 34723.

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1970.

Decided Jan. 5, 1971.

Matthew Muraskin, Mineola, N. Y. (Susan Crandall and James J. McDonough, Mineola, N.Y., on the brief), for petitioner-appellant.

Robert S. Hammer, Asst. Atty. Gen., New York City (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, on the brief), for respondent-appellee.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

MEDINA, Circuit Judge:

Two points raised by appellant require brief discussion. We have given consideration to the other arguments presented in appellant's behalf and find no merit in any of them.

In the light of the accurate description of her assailant given by the victim to the police immediately after the rape and her repeated and positive identifications of appellant, both in court and at the line-up three days after the event, we think it is clear beyond a reasonable doubt that her identification was based exclusively on her observation of the man during the assault and not in any degree on either of two questionable incidents that, according to appellant's argument, nullify the identification and require a reversal.

The first of these incidents was during the period immediately after the rape, when the police of Nassau County, N. Y., where the crime was committed, wished to make sure that their investigation was not focused on an innocent man. Suffolk County, N. Y. authorities had forwarded photographs of appellant who was a suspect in connection with a similar crime also committed in a church in that county. The Nassau County police showed these photographs to the victim of the rape and she said he was the man. The wiser course for the police to have followed would have been to display several photographs together, including photographs of persons other than appellant.

The other incident occurred just before the trial started. It had been brought to the attention of the prosecutor that appellant, who had brown hair and a crew cut at the time of the rape, had dyed his hair black and had let his hair grow long. As the prosecutor wished to be sure the victim would identify appellant in court, despite the change in his appearance, and as he expected to refer to the anticipated identification in his opening statement to the jury, he asked her to watch in the corridor as appellant was escorted past her into the court room. She had said at the time of this incident, "I will never forget the man that did it and I don't care what he has done, I will recognize him." And she did. But the prosecutor had forgotten to make sure that his lawyer was present, although he was only a short distance away. Of course, a strict compliance with the rulings in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (all decided on the same day, June 12, 1967), required that appellant be advised of what the prosecutor proposed to do and be told that he had a right to have his lawyer present, as this incident occurred some months after June 12, 1967. The incident of the photographs, however, took place nearly two months before *Wade, Gilbert* and *Stovall.*

But the rulings in *Wade, Gilbert* and *Stovall* are not to be applied in such fashion as to constitute escape hatches for the guilty. With respect to the incident of the photographs, Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), is directly in point. As said by Justice Harlan at page 384, 88 S.Ct. at page 971:

Despite the hazards of initial identification by photograph, this proce-

dure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

Taking the circumstances of the case as a whole we find, and the other courts that have affirmed appellant's conviction have necessarily concluded,[1] that the identification procedures adopted prior to the day of the trial, including the showing of the photographs and the line-up, were not, "in light of the totality of surrounding circumstances," "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The case in support of identification here is even stronger than in United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2d Cir.), cert. denied, 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969), and United States v. Ayers, 426 F.2d 524 (2d Cir. 1970).

The prosecution relied upon the in-court identification by the victim from the witness chair. The other incidents were brought out in the course of a rigorous and extensive cross-examination. It is clear to us that the in-court identification here was based upon observation of the appellant by the victim during the assault, and not on the incidents related above. The victim had ample time to see the face of the man who attacked her and she was positive throughout that appellant was that man. Nor was there any delay. The photographs were shown to her the day after the rape. The line-up, with respect to which no criticism worthy of the name has been directed, was three days after the rape. And, besides corroborative evidence of an all but conclusive character, referred to in Judge Dooling's opinion, there was the description given by the victim of the jacket appellant was wearing at the time of the assault. This jacket was identified as belonging to appellant by the woman with whom he was living at the time and it was found at his home. This witness told one of the policemen that appellant was wearing this jacket in the afternoon of the commission of the crime. The significance of this item of proof was strongly reinforced by a curious incident. When first produced at the trial it seemed, in the bright light of the court room, that the victim's description of the colors of the jacket as "dark blue with orange stripes" was erroneous. But an examination of the colors of the jacket in the church, where the light was filtered through the stained glass windows, proved to be exactly correct. And, incidentally, while the light inside the church was somewhat dim, there was sufficient light to make the victim's identification of her attacker possible, as the assault occurred at about 6 P.M. on a day in May when it was broad daylight outside the church.

Moreover, with respect to the incident in the corridor just before the commencement of the trial, we find, as did Judge Dooling, that this was beyond a

---

1. People v. Beyer, 31 A.D.2d 767, 298 N.Y.S.2d 620 (2d Dept.), aff'd, 25 N.Y. 2d 833, 303 N.Y.S.2d 685, 250 N.E.2d 728 (1969).

reasonable doubt harmless error. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We are grateful to Matthew Muraskin, Chief of the Appeals Bureau of the Legal Aid Society of Nassau County, N. Y., and to his associates, James J. McDonough and Susan Crandall, for their exceptionally able representation of appellant.

Affirmed.