UNITED STATES of America ex rel. Samuel VALENTINE, Petitioner,

v.

Hon. John L. ZELKER, Warden, Green Haven Prison, Stormville, New York, Respondent.

No. 70 Civ. 3617.

United States District Court, S. D. New York.

Jan. 27, 1971.

Samuel Valentine, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of New York, for respondent; Benton J. Levy, Asst. Atty. Gen., of counsel.

OPINION

FRANKEL, District Judge.

On the night of October 13, 1965, shortly after 8:30 p. m., a sixteen-year-old girl was watching television while she served as a baby sitter in a home in

New Castle, New York. Sensing the presence of someone behind her, she turned and saw a man standing in the room holding a rag in his hand. The room was amply lighted, and she saw him face-to-face for a period of a half minute or so. He proceeded to put the rag on her face and knock her down. There followed a scuffle, after which the assailant took the girl through the house, forcing her to look through various rooms and articles of furniture for money or other things to steal. Then he took her to the houskeeper's room, where she was thrown upon a cot, raped and subjected to acts of sodomy. Some minutes after the man had left the house, the girl called her home to report the crime, whereupon her family notified the police, who were soon at the scene to commence their investigation of the crime and search for its perpetrator.

The victim gave the police a fairly detailed description of the criminal, portraying him as a tall male Negro about 35–40 years old with a mustache, describing his grey jacket and trousers, and mentioning that he had been wearing a white hat. Her description was made the subject of a teletype distributed throughout Westchester County.

Within about six hours following the rape, the police showed the girl a picture of a black musician and asked whether this had been her attacker. She replied that this was not the man. Then, at 10 p. m. on October 14, just over twenty-four hours after the crime, the girl was shown a second picture, this one of peti-tioner. She promptly identified him as the one who had attacked her. About an hour or so later she was taken to the Tarrytown Police Station where she was directed to look through a one-way window into a room in which there were two men, the petitioner and a uniformed black police officer. She identified petitioner immediately as her assailant. In the course of her observations, he was wearing a grey jacket and grey pants, and, at least at some point, a white hat. In addition to identifying the petitioner, the girl described his clothing as the gar-

ments that had been worn by the man who attacked her.

Petitioner was brought to trial in April of 1967 on charges of rape, sodomy and burglary. Appearing as the crucial witness for the prosecution, the girl victim made a courtroom identification of the petitioner. There was additional evidence, including medical and other matters, but none of these details is important for present purposes.

The petitioner did not take the witness stand, but presented two witnesses in support of an alibi defense. The trial judge, petitioner having waived a jury, found these defense assertions incredible, and the whole record, which has been studied by this court, seems quite vividly to confirm that view. Upon all the evidence, convinced of guilt beyond a reasonable doubt, the judge convicted the petitioner on all counts.

The judgment was affirmed on appeal. However, one judge in the Appellate Division dissented, concluding that a hearing should be held on the question of whether the trial identification of Valentine was "tainted" by the pretrial show-up procedure. People v. Valentine, 32 A.D.2d 822, 302 N.Y.S.2d 983, 984 (2d Dept. 1969). The State Court of Appeals unanimously affirmed without opinion. 26 N.Y.2d 654, 308 N.Y.S.2d 385, 256 N.E.2d 540 (1970).

Petitioner thereafter made an unsuccessful application for coram nobis, the grounds of which are not made clear in the papers here presented. The details of that make no difference, however, since it is undisputed that the issue of identification upon which the petitioner now seeks federal habeas was thoroughly exhausted in the initial state proceedings. The claim here is that the pretrial identification on a "show-up" (of which evidence was admitted at the trial) was itself fundamentally unfair, and, in addition, that the later in-court identification was so tainted by the earlier observation that it should have been excluded.

Petitioner's trial having antedated the decisions in United States v. Wade, 388

U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the rules of those cases are inapplicable. Our question is whether, in "the totality of the circumstances," Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the identification prior to trial made the total procedure of identification "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); see also Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). This is a "very difficult test to meet," United States ex rel. Williams v. La Vallee, 415 F.2d 643, 645 (2d Cir. 1969), although petitioner's argument is a substantial one. Considering all the circumstances together, this court has concluded that the petition must be denied.

The already considerable body of cases on the subject of this petition makes it evident that decision must turn upon the particularized "totality of the circumstances" comprising each situation. There are, unquestionably, imperfections of a troublesome nature in the identification procedures of which petitioner complains:

(1) The display to the victim of a single photograph is far from ideal. Cf. Simmons v. United States, 390 U.S. 377, 383–84, 385–86 [88 S.Ct. 967, 19 L.Ed.2d 1247] (1968); United States ex rel. Beyer v. Mancusi, 2d Cir. No. 34723, Jan. 5, 1971, slip op. 1161 [436 F.2d 755].

(2) The "show-up," with only petitioner and a uniformed officer in the room, was a poor alternative to a soundly organized lineup. Cf. Stovall v. Denno, 388 U.S. 293, 302 [87 S.Ct. 1967, 18 L.Ed. 2d 1199] (1967); Foster v. California, 394 U.S. 440, 443 [89 S. Ct. 1127, 22 L.Ed.2d 402] (1969); Biggers v. Tennessee, 390 U.S. 404, 407 [88 S.Ct. 979, 19 L.Ed.2d 1267] (1968) (equally divided court, Douglas, J. dissenting); Palmer v. Peyton, 359 F.2d 199, 201 (4th Cir. 1966); Crume v. Beto, 383 F.2d 36, 39 (5th Cir. 1967); United States ex rel. James v. Follette, 301 F.Supp. 569, 572 (S.D.N.Y.1969). The problem in this aspect was aggravated when the police officers, taking the young victim to the police station, told her she was going to Tarrytown "to further identify for positive identification the man she [was] accusing."

Cf. Simmons v. United States, *supra* [390 U.S.], at 385 [88 S.Ct. 967]; Biggers v. Tennessee, *supra* [390 U.S.], at 408 [88 S.Ct. 979]; Palmer v. Peyton, *supra* 359 F.2d], at 201; United States ex rel. James v. Follette, *supra* [301 F.Supp.], at 572.

(3) The victim's trial testimony was inconsistent in noticeable respects with her initial statements to police officers [1] and her testimony at a preliminary hearing,[2] and there were shifts again in the course of the trial itself.[3] These by no means destroyed the efficacy of the identification but are productive of uncertainties that make this case less than a per-

---

1. There was apparently a discrepancy as to whether the rape had preceded or followed the ransacking.

2. The victim's conflicting statements included whether she had placed a ransacked box back on the shelf; whether she could see the front door from the cot and whether she had heard the front door close as the assailant left; after the assailant left, how long she had stayed on the cot, and the number of doors she had locked.

3. For example, she was inconsistent when describing the duration of both particular events and the entire episode, and contradictory on the subject of whether she had screamed at all.

fectly clear one against the petitioner.

Weighing in the other direction, and, in the last analysis, outweighing the adverse factors outlined above, is an array of circumstances refuting the claim that this court should reject the state findings and hold here, as a matter of federal constitutional law, that there has been a fatally substantial likelihood of "irreparable misidentification." Simmons v. United States, *supra*, 390 U.S. at 384, 88 S.Ct. 967:

(1) The evidence shows that the complaining witness had ample opportunity to observe the petitioner at close quarters for a period sufficient to lend considerable reliability to her testimony. Cf. Simmons v. United States, *supra*, 390 U.S. at 385 [88 S.Ct. 967]; United States ex rel. Beyer v. Mancusi, *supra* at 1163 [436 F.2d 755]; United States ex rel. Anderson v. Mancusi, 413 F.2d 1012, 1013 (2d Cir. 1969); United States ex rel. Rutherford v. Deegan, 406 F.2d 217, 219 (2d Cir. 1969).

(2) The girl's rejection of the first photographed subject as her assailant added some measurable weight to her identification of petitioner in the second photograph. Cf. United States ex rel. Williams v. La Vallee, 415 F.2d 643, 645 (2d Cir. 1969); United States ex rel. Rutherford v. Deegan, *supra*, 406 F.2d at 220; United States ex rel. James v. Follette, *supra*, 301 F.Supp. at 573.

(3) The identification of petitioner from the photograph happened quite shortly (within a few hours) following the attack. Similarly, relatively little time elapsed between the crime and the show-up. Cf. Simmons v. United States, *supra*, 390 U.S. at 385 [88 S.Ct. 967]; United States ex rel. Beyer v. Mancusi, *supra*, at 1163 [436 F.2d 755]; United States ex rel. Anderson v. Mancusi, *supra*, 413 F.2d at 1013; United States

ex rel. Williams v. La Vallee, *supra*, 415 F.2d at 645.

(4) The identification through the one-way window was "complete and instantaneous," a circumstance that has been noted elsewhere as militating against claims like the present petitioner's. United States ex rel. Rutherford v. Deegan, *supra*, 406 F.2d at 220; United States ex rel. Anderson v. Mancusi, *supra*, 413 F.2d at 1013–14.

(5) The description of the assailant which formed the basis of the teletype alert was supplied by the victim promptly, and in a detail suggesting accuracy. Cf. United States ex rel. Williams v. La Vallee, *supra*, 415 F.2d at 645; United States ex rel. Rutherford v. Deegan, *supra*, 406 F.2d at 220; United States ex rel. Beyer v. Mancusi, *supra* at 1160 [436 F.2d 755].

(6) As against the brief period between the crime and pretrial identification, there was a considerable time (approximately 18 months) between the pretrial identification and the identification of the petitioner at the trial. These time relationships diminish the danger that the witness had been led "to retain in [her] memory" the image on the photograph or her observation at the show-up rather than the recollection of her assailant as he loomed near her in the well-lighted room of their initial encounter. See Simmons v. United States, *supra*, 390 U.S. at 383–84 [88 S.Ct. 967] (1968); United States ex rel. Beyer v. Mancusi, *supra*, at 1163 [436 F.2d 755].

(7) Petitioner having waived a jury, the trial was before a judge alone; "the special capacity and experience of judges * * * to discriminate between real and fancied dangers of the miscarriage of justice" in identification

cases have been noted, Clemons v. United States [133 U.S.App.D.C. 27], 408 F.2d 1230, 1237 (D.C. Cir. 1968). And see *id.* at 1242; United States v. Kemper, 433 F. 2d 1153, 1156 n.24, 1158 (D.C.Cir. 1970). Cf. Townsend v. Sain, 372 U.S. 293, 314–15 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963); Stevens v. Vowell, 343 F.2d 374, 380 (10th Cir. 1965); Dove v. Peyton, 343 F.2d 210, 214 (4th Cir. 1965); People v. Brown, 24 N.Y.2d 168 [299 N.Y.S.2d 190, 247 N.E.2d 153] (1969).

Having considered the above list of competing considerations, having appraised these matters in the light of the decided cases, and having studied with care the transcript of petitioner's trial, this court concludes that there has been no such basic departure from the standards of fundamental fairness in the context of the problem presented as to warrant nullification of the conviction for violation of the federal due process guaranty. Accordingly, the petition is denied. So ordered.