**UNITED STATES of America ex rel. Robert BASKERVILLE, Petitioner,**

**v.**

**Harry FRITZ, Warden of Auburn Correc-tional Facility, Respondent.**

**No. 71-C-30.**

United States District Court,
E. D. New York.

April 28, 1971.

**34**

BARTELS, District Judge.

## MEMORANDUM-DECISION AND ORDER

Petitioner, Robert Baskerville, presently incarcerated in the Auburn Correctional Facility, Auburn, New York, upon conviction, after a jury trial, of the crimes of robbery in the first degree, grand larceny in the second degree, and assault in the second degree, seeks his release through federal *habeas corpus*. He was sentenced in the Supreme Court Kings County (Starkey, J.) to a maximum sentence of fifteen to twenty years and two and one-half to five years, to be served concurrently with a sentence of fifteen to twenty years previously imposed on February 19, 1968. Petitioner claims that his conviction should be set aside because (1) it was error to permit at trial testimony respecting a pretrial photographic identification of petitioner, (2) the in-court identification of petitioner by a witness was fatally infected by a prior illegal police station identification, and (3) the District Attorney's

summation was highly prejudicial. Prior to the trial petitioner was afforded a *Wade* hearing so that issues relevant to identification could be considered in advance of trial. The testimony adduced at the *Wade* hearing and trial may be summarized as follows.

At about 5 P.M. on August 2, 1967 a man, armed with a gun, entered an Ebinger's bakery shop in Brooklyn in which Alice Callan (the manager), Frances Cassidy and Vera Calicchia (clerks) were present. Upon entering the store the the man went behind the counter where the three employees were working and stated that he wanted the money. The man told the three women to proceed to the back of the store, which they did. He then ordered Miss Callan to instruct the other two women to enter a small bathroom which was just off the back room of the store. The two women complied with this order and the gunman then directed Miss Callan to give him the money. She removed over $300 from a desk and placed it on a table. He asked her if there was any more money. She went to the store safe located in the rear room, looked into it and informed the robber that there wasn't any more money. He thereupon ordered her into the bathroom with the other two girls and then fled from the store. The sequence of events consumed approximately two minutes. Miss Callan testified that she looked directly into the man's face when he first entered the shop and during the ensuing conversations. She further testified that the areas where she observed him were well lighted. Shortly after the robbery Miss Callan called the Ebinger office, which in turn communicated the information to the police. When the police came she described the robber as a slim male Negro, approximately six feet tall, between 25 and 30 years of age with a mustache and a goatee.

About twelve days after the robbery Miss Callan was visited by Detective Gross of the New York City Police Department. He showed her approximately fifteen photographs from which she

picked the picture of Baskerville as the perpetrator of the robbery. Several weeks after this event Miss Callan was asked to come to the police station. Through a one-way mirror she viewed Baskerville and a Negro detective dressed in civilian clothes. The latter individual was heavier, older and several inches shorter than petitioner. She identified Baskerville as the man who had held up the bakery store. Baskerville was in custody at that time because he had been arrested on another robbery charge for which counsel had already been appointed. Detective Gross testified that Baskerville had been paroled in his custody to be rearrested for the Ebinger robbery. Baskerville was not told that he was going to be viewed nor was he informed that he had a right to an attorney.

At the *Wade* hearing Baskerville's attorney introduced a picture of one Charles Williams who bore a close resemblance to Baskerville and who had been mistaken for Baskerville in the past. This picture was added to the fifteen photographs used in the prior photographic identification and Miss Callan was asked whether she recognized anyone depicted. She chose three photographs which she stated closely resembled each other. Of these three she selected Baskerville as the man who had committed the robbery. In addition, at the hearing a lineup was arranged so that Miss Cassidy could view the defendant. The hearing was adjourned to permit the defense to secure Charles Williams as one of the five participants in the lineup. At this lineup Miss Cassidy identified Baskerville as the man who had committed the robbery. After this identification, Miss Cassidy testified that she viewed the robber for about thirty seconds at the time of the robbery.

At the conclusion of the *Wade* hearing Judge Starkey ruled that an in-court identification by Miss Callan would not be tainted by the prior station house identification. The defendant's attorney then stated that he had nothing to say with reference to Miss Cassidy.

At trial Miss Callan and Miss Cassidy identified petitioner as the man who had committed the robbery. In addition, on re-direct examination the prosecutor elicited testimony regarding Miss Callan's prior photographic identification of petitioner and introduced the photographs into evidence.

On appeal the Appellate Division, Second Department, split three to two. 32 A.D.2d 555, 300 N.Y.S.2d 124 (1969). The majority held that although it was error under state law to permit testimony respecting Miss Callan's photographic identification, such error was harmless in view of the positive and convincing identification by the two witnesses. The court also ruled that Miss Callan's in-court identification was not tainted by the prior station house identification. The dissenters, however, were of the opinion that the station house identification which was conducted without counsel violated the rule established in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and thus tainted the in-court identification. They concluded that this was not harmless error beyond a reasonable doubt and that when coupled with the error of permitting testimony of the prior photographic identification, a new trial was mandated. The Court of Appeals unanimously affirmed without opinion, 27 N.Y.2d 966, 318 N.Y.S.2d 499, 267 N.E.2d 274 (1970).

### Photographic Identification

Petitioner's objection to the admission of evidence respecting the prior photographic identification does not raise a claim cognizable in a federal *habeas corpus* proceeding. Testimony concerning a prior identification, photographic or otherwise, can be attacked upon the ground that it is hearsay in nature. See 4 Wigmore, Evidence § 1130 (3d Ed. 1940); Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv.L.Rev. 177, 192–196 (1948). It is not, however, vulnerable to

the charge that its admission violates an accused's constitutional rights of due process or confrontation. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); United States v. Miller, 381 F.2d 529 (2d Cir. 1967), cert-denied, 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968); United States v. Forzano, 190 F.2d 687 (2d Cir. 1951); United States v. Reed, 376 F.2d 226 (7th Cir. 1967); cf. Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Whether or not the state courts were correct, as a matter of state law, in construing the error as harmless error is not an issue upon which this tribunal may pass judgment. See Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L. Ed. 166 (1941); Crisafi v. Oliver, 396 F. 2d 293 (9th Cir. 1968); United States ex rel. Hardy v. McMann, 292 F.Supp. 191 (S.D.N.Y.1968); United States ex rel. Siegal v. Follette, 290 F.Supp. 632 (S.D. N.Y.1968); United States ex rel. Green v. McMann, 268 F.Supp. 529 (S.D.N.Y. 1967).

### Station House Identification

■ The most substantial claim urged by petitioner is that it was error to permit Miss Callan to identify him at the trial in view of the circumstances surrounding the station house identification. Since the station house identification occurred subsequent to the Supreme Court decisions in United States v. Wade, supra, and Stovall v. Denno, supra, the initial question for consideration is whether petitioner was entitled to counsel at that identification. We find that this identification was the type of confrontation at which a defendant should have been accorded the right to counsel. Although United States v. Wade involved a post-indictment identification, the reasoning of that decision fully applies to the circumstances of the instant case. Here, petitioner had been arrested and arraigned with counsel for another robbery. He was paroled in the custody of Detective Gross for the specific purpose

of being rearrested on the instant charge. Soon thereafter he was taken to a room and viewed by Miss Callan. This identification, which occurred approximately one month after the robbery, bears insufficient resemblance to a rapid scene-of-the-crime identification to which Wade has been held inapplicable. See United States v. Davis, 399 F.2d 948 (2d Cir. 1968), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1968); United States v. Sanchez, 422 F.2d 1198 (2d Cir. 1970); Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968). Time was not of the essence at the station house identification and providing Baskerville with counsel for purposes of the identification would not have frustrated any legitimate law enforcement interest.

■■ However, an error committed during a pretrial identification does not per se disqualify the identifying witness from making an in-court identification of the defendant. The rule is that the witness will be permitted to identify the defendant at trial if the government can "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." United States v. Wade, supra, 388 U.S. at 240, 87 S.Ct. at 1939. The government has clearly carried this burden under the facts of this case. United States v. Ayers, 426 F.2d 524 (2d Cir. 1970), cert. denied, 400 U.S. 842, 91 S.Ct. 85, 27 L.Ed.2d 78 (1970); United States ex rel. Beyer v. Mancusi, 436 F.2d 755 (2d Cir. 1971). Miss Callan, described by the hearing judge as a bright, mature, alert young businesswoman, directly viewed the defendant in close proximity in a well-lighted area for approximately one and a half minutes. During this period she had an excellent opportunity to observe the facial characteristics of the defendant. Immediately after the robbery she provided the authorities with a detailed description of the robber. She testified that she found several of the defendant's features unusual and distinctive, most particularly

his high cheek bones and sunken cheeks. Of great significance is the fact that approximately twelve days after the robbery Miss Callan identified petitioner's picture from a group of fifteen photographs. This identification was conducted with the utmost regard for fairness and no charge of undue suggestion has been leveled against it. Miss Callan's identification of Baskerville at the station house amounted to nothing more than a confirmation of an identification that she had already made under unassailable circumstances. Miss Callan was able to repeat the photographic identification at the *Wade* hearing even with the addition of the photograph of Charles Williams. In addition, Miss Cassidy, who had observed the robber for about thirty seconds and who had never been involved in an improper identification procedure, had no trouble in identifying Baskerville at the *Wade* hearing lineup. Under the factual circumstances of this case, we are compelled to agree with the state court's finding that the station house identification in no way tainted Miss Callan's in-court identification of Baskerville. Our determination of this issue is based upon an independent review of the state record. It should be noted, however, that where, as here, factual findings are made by state tribunals after a full and fair hearing, they are accorded presumptive validity in federal *habeas corpus* proceedings. 28 U.S.C. § 2254(d).

### Prosecutor's Summation

■ Finally, petitioner launches a broadside attack on much of the prosecutor's summation. We have carefully examined these specifications of error and find them to be without merit. The prosecutor's comment on the "uncontroverted evidence in the case" did not amount to a comment upon the petitioner's failure to take the stand (United States v. Persico, 425 F.2d 1375, 1386 (2d Cir. 1970), cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970); United States ex rel. Leak v. Follette, 418 F.2d 1266 (2d Cir. 1969), cert. denied, 397

U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970)), especially in view of the fact that petitioner's counsel, in his summation, made direct reference to the fact that petitioner did not take the stand. Nor can it be said that petitioner's constitutional rights were violated by the prosecutorial reference to Charles Williams. Moreover, we find no evidence that the remainder of the summation was so improper as to deny petitioner due process of law. United States ex rel. Castillo v. Fay, 350 F.2d 400 (2d Cir. 1965), cert. denied, 382 U.S. 1019, 86 S.Ct. 637, 15 L.Ed.2d 533 (1966); United States ex rel. James v. Follette, 301 F.Supp. 569, 574 (S.D.N.Y.1969), aff'd, 431 F.2d 708 (2d Cir. 1970).

Accordingly, petitioner's application for a writ of *habeas corpus* must be and hereby is denied.

So ordered.