**UNITED STATES of America ex rel. William Lee JACKSON, Petitioner,**

**v.**

**Hon. Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Auburn, New York, Respondent.**

**Civ. No. 1972–590.**

United States District Court, W. D. New York.

Nov. 3, 1975.

Brian F. Toohey, Buffalo, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. (Bedros Odian, Buffalo, N. Y., of counsel), for respondent.

CURTIN, Chief Judge.

This is a petition for a writ of habeas corpus. 28 U.S.C. § 2254. William Lee Jackson was convicted of second degree robbery in Erie County Court, Buffalo, New York. On November 21, 1967 judgment was entered and petitioner was sentenced to a term of imprisonment of not less than seven and one-half years, nor more than fifteen years. The appellate court to which the conviction was directly appealed remanded the case to the trial court for a hearing [*People v. Jackson*, 32 App.Div.2d 729, 302 N.Y. S.2d 155 (4th Dept., App.Div., N.Y. 1969)] and affirmed the results of that hearing and the conviction [*People v. Jackson*, 37 App.Div.2d 696, 323 N.Y.S. 2d 409 (4th Dept., App.Div., N.Y.1971)]. The New York Court of Appeals denied permission to appeal. The petitioner has, therefore, exhausted his state remedies on the issues discussed below.

On November 25, 1966, Keller's Pharmacy in Buffalo, New York was robbed. At the time of the crime, a pharmacist, Mildred Tambine, and two sales clerks, Celeste Jones and Elizabeth Kurek, were in the store. Three days after the crime, the two clerks were asked if they could identify the petitioner as the robber at police headquarters. They viewed the petitioner for five to ten minutes. *People v. Jackson*, Indictment #33,034, Hearing Transcript [hereinafter H.Tr.], at 122 (Erie County Court, N.Y.1970). They were asked to identify only the petitioner and he was the only black man in the room where the identification took place. *People v. Jackson*, Trial Transcript [hereinafter T.Tr.], at 90, 109, 150, 155, 224–25. Both of these witnesses testified at trial that they had identified the petitioner at police headquarters. T.Tr., at 66–68, 134–36. At trial, one of the clerks, Miss Kurek, also testified that she had identified the petitioner when he appeared in Buffalo City Court. T.Tr., at 136–37. Both the sales clerks identified the petitioner at trial as the robber. T.Tr., at 69, 136.

Mildred Tambine, the pharmacist, was not able to identify the petitioner when she viewed him standing alone on the other side of a door at the police station within a week after the crime (T.Tr., at 46), nor was she able to identify him at his city court arraignment. T.Tr., at 25. However, she was able to identify him at the trial. T.Tr., at 25. She had been the person whom the robber had directly confronted at the pharmacy and saw the robber "face to face." T.Tr., at 17.

On direct appeal, the Fourth Department, Appellate Division, found that ". . . there appeared to have been no imperative circumstances necessitating such procedure—of having the three eye-witnesses to the robbery view, for identification purposes only, the very suspect whom the police had taken into custody for the crime . . . ." *People v. Jackson*, 32 App.Div.2d 729, 302 N.Y.S.2d 155 (4th Dept., App.Div., N.Y.1969). Concluding that these procedures were "impermissible and improper," that court remitted the case for ". . . a hearing where the People must prove by 'clear and convincing' evidence that the witnesses' in-court identification was not tainted by the improper show-up . . . ." *Id.* After the hearing, the state court judge found that "the in-court identifications of this defendant were based upon independent observation of the defendant at the time of the crimes" and ruled that the identification testimony was admissible at trial. *People v. Jackson*, Indictment #33,034 (Erie County Court, N.Y., decided March 10, 1971).

The petitioner has two major arguments. The first is that, in addition to ruling that the pretrial identifications were inadmissible, the state court should have remanded the case for a new trial preceded by a hearing to determine the effect of the pretrial identifications on later in-court identifications. His second argument is that the evidence adduced at the hearing after the remand from the state appellate court did not support the state judge's conclusions.

■ To support his first argument, the petitioner contends that the per se exclusionary rule covering testimony of improper pretrial identifications announced in *Gilbert v. California*, 388 U. S. 263, 272–3, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), should apply in this case since the petitioner's trial and appeal occurred after the decision in *Gilbert* was made (June 12, 1967). On the same day, the Supreme Court ruled in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that the holding in *Gilbert* would have prospective application only. In Jackson's case, the confrontation occurred before June 12, 1967. The contention that the *Gilbert* case should apply to this case cannot be accepted. In *Stovall*, the Supreme Court made it clear that *Wade* and *Gilbert* would be "the only victims of pretrial confrontations [before the date of June 12, 1967] in the absence of their counsel to have the benefit of the rules established in their cases." *Stovall, supra*, 388 U.S. at 301, 87 S.Ct. at 1972. The per se exclusionary rule of *Gilbert* was designed to prevent police authorities from circumventing the right to counsel at lineups by the use of less reliable identification procedures without counsel present. *Gilbert, supra*, 388 U.S. at 273, 87 S.Ct. 1951; *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Since the right to

counsel at the critical lineup did not exist before the *Wade-Gilbert* decisions, the sanction of a per se exclusionary rule covering testimony of other pretrial identification procedures cannot be applied to identifications that took place before *Gilbert*, as in the instant case.[1]

■ However, finding that the petitioner cannot gain the benefit of the *Gilbert* exclusionary rule does not end the inquiry in this area. For, independent of any right to counsel claim, use of testimony of improper pretrial identification may violate due process strictures. *Stovall, supra*, 388 U.S. at 302, 87 S.Ct. 1967, *citing Palmer v. Peyton*, 359 F.2d 199 (4th Cir. 1966). That test was rephrased in *Stovall, supra*, 388 U.S. at 301–02, 87 S.Ct. 1967, and for pre-*Stovall* cases has been stated in this fashion:

> We turn, then, to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers, supra*, 409 U.S. at 199–200, 93 S.Ct. at 382.

There is no doubt that the pretrial police station confrontations were suggestive; the Appellate Division categorized them as "improper and impermissible." *People v. Jackson, supra*. An examination of those factors considered crucial

---

1. Given the same chronology of identification procedure before and trial after the *Wade* and *Gilbert* decisions, the Second Circuit recently ruled that petitioner's case would be governed by the rules in effect before *Wade* and *Gilbert*. *United States of America ex rel. Gibbs v. Vincent*, 524 F.2d 634 (2d Cir., decided October 29, 1975).

in determining the reliability of the pretrial confrontations follows.

■ The opportunity of the two clerks to view the criminal at the time of the crime was not optimum, and their degree of attention was minimal, producing varying descriptions. Celeste Jones observed the robber briefly from an angle. She could not see both sides of his face at the same time. T.Tr., at 58–60, 74; H.Tr., at 51. She was frightened and concentrated on his activities. H.Tr., at 68; T.Tr., at 77. She testified that the robber had a moustache. T.Tr., at 68, 78; H.Tr., at 41. The other clerk, Elizabeth Kurek, had an opportunity to observe his full face. T.Tr., at 123. She paid particular attention to his lips and nose. T.Tr., at 139. She testified that he had no moustache (H.Tr., at 97), and she was not sure whether he wore a hat. H.Tr., at 106. Mildred Tambine, the pharmacist, testified that the robber's head was covered by a bandanna and a hat. T. Tr., at 18.

The length of time between the robbery and the confrontation was three days. The witnesses identified the petitioner after viewing him for five to ten minutes (H.Tr., at 122), after at least one of them had been told he was the suspect. T.Tr., at 151.

Of key consideration in instances like this is the identification that is made by the person who is the direct object of the crime. *See United States ex rel. Bates v. Mancusi*, 360 F.Supp. 1340 (W. D.N.Y.1973). Here, the pharmacist had the clearest and longest view of the robber. T.Tr., at 17. Yet, she could not identify him a week after the crime (T. Tr., at 46), or later at the city court arraignment. T.Tr., at 25. In a similar case, the Supreme Court has held that an identification, preceded by suggestive confrontations at which the witness did not identify the defendant, is inadmissible, concluding that the identifications were "virtually inevitable" under the circumstances. *Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d

402 (1969). The Supreme Court has commented that once " . . . the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph [or suspect viewed by him] rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Simmons v. United States*, 390 U.S. 377, 383–84, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). This comment is also appropriate for a witness who is exposed to continual one-on-one confrontations, and finally, after three viewings, identifies the individual as the criminal. This court concludes under the "totality of the circumstances" that the likelihood of misidentification at the pretrial confrontation was great, and the testimony of the sales clerks about these pretrial viewings should have been excluded from the trial. Permitting this testimony at trial resulted in a denial of due process. Since that testimony concerning the out-of-court identification was inadmissible, the conviction must be overturned. *Neil v. Biggers, supra,* 409 U.S. at 198, n.5, 93 S.Ct. 375. This testimony cannot be considered harmless error, since it was at the very center of the prosecution's case. This court does not believe use of the testimony "was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ The application for the writ of habeas corpus is granted with the following conditions. The relief requested by the petitioner, release from custody, is to be granted unless the State of New York begins new criminal proceedings, not inconsistent with this decision, against him within forty-five days. If the State decides to reprosecute, it must have a new hearing to determine whether the witnesses' in-court identifications at trial will be based upon independent observation of the criminal at the time of the crime, *i. e.,* separate from the inadmissible pretrial confrontations. *United States v. Wade*, 388 U.S. 218,

240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966). The somewhat ambiguous testimony given by the witnesses at the first hearing (H.Tr., at 89–91, and 128–29), and the highly questionable tactics of the prosecution showing pictures of the defendant taken at the time of the suggestive confrontations, before asking the witnesses to make in-court identifications (T.Tr., at 49–51, 68–71 and 137–38), cast doubt on the validity of the finding of independent origin at the first hearing. A new hearing is, therefore, necessitated if reprosecution takes place.

So ordered.